[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10791

_____

D. C. Docket No. 07-00126-CR-4

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2009
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER J. MITCHELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 22, 2009)

Before BIRCH and BARKETT, Circuit Judges, and KORMAN,* District Judge.

PER CURIAM:

_____

*The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

This is an appeal from a judgment entered after a plea of guilty convicting Peter Mitchell of one count of receipt of electronic images of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (2006). The plea of guilty preserved Mitchell's right to appeal from the denial of his motion to suppress the evidence obtained from the hard drive of his computer after it was seized from his home. *See* Fed. R. Crim. P. 11(a)(2). The principle issue raised on appeal turns on the reasonableness of a delay of twenty-one days in obtaining a search warrant after the seizure of the hard drive.

## BACKGROUND

Sometime in 2005, Immigration and Customs Enforcement (ICE) agents in New Jersey, under the direction of the United States Attorney, began an investigation of individuals engaged in distributing and receiving child pornography via the internet. In October 2005, an ICE agent located a commercial website whose banner page proclaimed "NOW YOU ARE [A] FEW MINUTES AWAY FROM THE BEST CHILDREN PORN SITE ON THE NET!" and which displayed more than a dozen images of minors engaged in sexual acts. After using his credit card on October 26, 2005 to purchase access to the website in an undercover capacity, the ICE agent's credit card statement displayed a $79.99 charge to "AdSoft," a bill payment service. Upon entry to the website, the ICE

agent discovered it contained thousands of images of child pornography. Through the use of search warrants and wiretaps, agents were able to identify hundreds of individuals who had visited the website between October 2005 and February 2006.

The defendant, Peter Mitchell, was identified as a possible target of this investigation because information obtained from the issuer of his credit card reflected two charges of $79.99 to AdSoft on October 14, 2005 and June 14, 2006.

On February 22, 2007, ICE Special Agent Thomas West and FBI Special Agent Josh Hayes went to Mitchell's residence to conduct a "knock and talk." When Mitchell answered the front door, Agents West and Hayes asked if they could come inside and speak with him about an ongoing investigation, to which Mitchell gave his consent. Agents West and Hayes explained that they were conducting a child pornography investigation, and asked Mitchell whether he had purchased subscriptions to any pornography websites. Mitchell told them that he had purchased subscriptions to two pornography websites. After Mitchell told the agents that there were two personal computers in his residence—a laptop upstairs used primarily by his wife, and a desktop computer downstairs used primarily by Mitchell—the agents asked Mitchell whether either of the computers contained "illegal contraband." Mitchell responded "yes, probably." Agent West then asked Mitchell whether either of the computers contained any child pornography, to

3

which Mitchell again responded "yes, probably."

Mitchell consented to a search of the upstairs laptop computer, and executed a "Consent to Search" form, but refused to allow the agents to search the downstairs desktop computer. After Agent West performed a brief forensic examination of the laptop, he asked Mitchell if he could see the desktop computer. Mitchell assented, and brought the agents to the downstairs office where the computer was located. Upon viewing the desktop computer, Agent West asked Mitchell if that was the computer that contained the child pornography, and Mitchell stated that it was. Agent West then opened the computer's central processing unit ("CPU"), the casing which contains all the internal parts of the computer, and removed the computer's hard drive from the CPU. The agents departed from Mitchell's residence at approximately 12:00 p.m. with only the hard drive.

The following Sunday, February 25, 2007, West traveled to Virginia to attend a two-week ICE training course. On March 15, 2007, three days after his return to Savannah and twenty-one days after the initial seizure of Mitchell's hard drive, an application for a search warrant was presented to a United States magistrate judge, who issued it the same day. The affidavit in support of the search warrant was twenty-three pages long, but of those twenty-three pages only

4

the cover page, paragraph two, and paragraphs twenty-five through twenty-nine—a total of less than three double-spaced pages—was composed of original content. The remainder was boilerplate taken from another affidavit. Acting pursuant to the warrant, Agent West accessed the materials stored on Mitchell's hard drive for the first time, and discovered electronic images of child pornography.

After he was indicted for receipt and possession of electronic images of child pornography, Mitchell moved to suppress the foregoing evidence. The motion was referred to a United States magistrate judge, who conducted a suppression hearing and who recommended that the motion to suppress be denied. *United States v. Mitchell*, No. CR407-126, 2007 WL 2915889, at *12 (S.D.Ga. 2007). The recommendation was subsequently adopted by the district judge. *United States v. Mitchell*, No. CR407-126, 2007 WL 3102167, at *1 (S.D.Ga. 2007). Mitchell then pled guilty while preserving his right to appeal from the denial of his motion to suppress.

## DISCUSSION

On this appeal, Mitchell argues that the Warrant Clause of the Fourth Amendment was violated when the law enforcement officers opened the CPU and removed the hard drive. Conceding the issue of probable cause, he argues that the

5

entire container should have been seized pending the application for a search warrant. Moreover, even if the seizure of the hard drive was proper, he argues that the twenty-one-day delay in obtaining a search warrant was unreasonable.

Mitchell's argument regarding the removal of the hard drive from the CPU without a warrant does not require any extended discussion. The CPU is a single purpose container designed to house the internal components of the computer. Mitchell does not allege that he used the CPU to store personal property, or that the CPU was opened to search for such property. While the disassembling of the CPU did not constitute a search of a container in which Mitchell had a reasonable expectation of privacy, it did constitute an interference with his possessory interest. So too would the seizure of the entire computer to ensure that the hard drive was not tampered with before a warrant was obtained. Yet Mitchell correctly concedes that such a seizure would not have violated the Warrant Clause. *Texas v. Brown*, 460 U.S. 730, 749-50 (1983) (Stevens, J., concurring); *United States v. Jacobsen*, 466 U.S. 109, 121 (1984); *United States v. Martin*, 157 F.3d 46, 53 (2d Cir. 1998); *see also United States v. Hernandez-Cano*, 808 F.2d 779, 782 (11th Cir. 1987). Under these circumstances, to borrow a phrase from the Supreme Court in an analogous case, which would have been "the 'greater' and which the 'lesser' intrusion is itself a debatable question." *Chambers v. Maroney*,

6

399 U.S. 42, 51 (1970).

But while the initial seizure of the hard drive was permissible, even "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" *Jacobsen*, 466 U.S. at 124. Thus, "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant." *Martin*, 157 F.3d at 54; *see also United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) ("even with the existence of probable cause to effect a seizure, the duration of the seizure pending the issuance of a search warrant must still be reasonable."). The reasonableness of the delay is determined "in light of all the facts and circumstances," and "on a case-by-case basis." *Mayomi v. United States*, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989). "[T]he reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" *Soldal v. Cook County*, 506 U.S. 56, 71 (1992); *see also United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006).

Computers are relied upon heavily for personal and business use. Individuals may store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature in electronic form on

their computer hard drives. Thus, the detention of the hard drive for over three weeks before a warrant was sought constitutes a significant interference with Mitchell's possessory interest. Nor was that interference eliminated by admissions Mitchell made that provided probable cause for the seizure. As the United States magistrate judge observed: "A defendant's possessory interest in his computer is diminished but not altogether eliminated by such an admission for two reasons: (1) a home computer's hard drive is likely to contain other, non-contraband information of exceptional value to its owner, and (2) until an agent examines the hard drive's contents, he cannot be certain that it actually contains child pornography, for a defendant who admits that his computer contains such images could be lying, factually mistaken, or wrong as a matter of law (by assuming that some image on the computer is unlawful when in fact it is not)." *United States v. Mitchell*, CR407-126, 2007 WL 2915889, at *7 (S.D.Ga. 2007).

While the possessory interest at stake here was substantial, there was no compelling justification for the delay. The hard drive was seized at noon on Thursday, February 25, 2007. Although Agent West testified that he was scheduled to depart for a two-week training program in West Virginia on February 28, 2007, this still left two and one-half days after seizing the hard drive before his scheduled departure. Indeed, the twenty-three-page supporting affidavit was

largely composed of boiler plate language, and contained less than three double-spaced pages of original content. Moreover, although Agent West departed Savannah on February 28, 2007, the FBI agent who accompanied Agent West to Mitchell's residence could have secured a warrant during Agent West's absence. As the United States magistrate judge observed, "[t]he government has never contended that Special Agent Hayes was unfamiliar with the background of the child pornography investigation or, if he was, that he could not have acquired sufficient knowledge to prepare a search warrant affidavit." *Mitchell*, 2007 WL 2915889, at *10.

The only reason Agent West gave for the twenty-one-day delay in applying for a search warrant was that he "didn't see any urgency of the fact that there needed to be a search warrant during the two weeks that [he] was gone," and that he "felt there was no need to get a search warrant for the content of the hard drive until [he] returned back from training." (Suppression Hr'g Tr. 18, July 11, 2007.) Subsequently, he explained that any sense of urgency was eliminated by Mitchell's admission that the hard drive contained child pornography.

While the United States Attorney does not offer this justification for the delay, and the United States magistrate judge properly rejected it, he argues that Agent "West was the only agent in the Southern District of Georgia, and Savannah

9

specifically, trained to conduct a forensic examination of the computer for child pornography." (Resp.'s Br. 5.) Because he was away until March 12, 2007, the search of the computer could not have been undertaken before then, even if a warrant had been obtained earlier. Thus, the argument continues, the delay "had no practical effect upon Mitchell's rights, for his possessory interest would not have been restored prior to" the issuance of the search warrant. (Resp.'s Br. 17-18.) Moreover, the United States magistrate judge suggested that "even if Agent West had secured a warrant on the day of the hard drive's seizure, his evaluation of that hard drive would not have been completed prior to his departure for the two-week training program, for given the thousands upon thousands of images and the numerous video files stored on Mitchell's hard drive, it took Agent West two weeks to complete his evaluation of only *some* of the images." *Mitchell*, 2007 WL 2915889, at *11.

We find these arguments unpersuasive because they are predicated on the premise that Agent West's attendance at the training session would have provided an excuse for the delay in applying for the warrant and, if a warrant had been obtained, it would have justified a delay in commencing the search of the hard drive until three weeks after its seizure. We reject this premise.

The United States magistrate judge correctly observed that "[t]he purpose of

securing a search warrant soon after a suspect is dispossessed of a closed container reasonably believed to contain contraband is to ensure its prompt return should the search reveal no such incriminating evidence, for in that event the government would be obligated to return the container (unless it had some other evidentiary value). In the ordinary case, the sooner the warrant issues, the sooner the property owner's possessory rights can be restored if the search reveals nothing incriminating." *Mitchell*, 2007 WL 2915889, at *7. If anything, this consideration applies with even greater force to the hard drive of a computer, which "is the digital equivalent of its owner's home, capable of holding a universe of private information." *Kansas v. Rupnick*, 125 P.3d 541, 552 (Kan. 2005).

Under these circumstances, the excuse offered for the three-week delay in applying for a warrant is insufficient. If Agent West's attendance at the training seminar could not have been postponed to a later date, an issue as to which no evidence was offered, there is no reason why another agent involved in this nationwide investigation, who possessed qualifications similar to that of Agent West, could not have been assigned the task of conducting the forensic search of the hard drive. The fact that Agent West did all of the forensic examinations in Savannah does not provide a basis for undermining the significant Fourth Amendment interests at stake here.

While we conclude that the delay in obtaining a warrant here was not justified, we emphasize again that we are applying a rule of reasonableness that is dependent on all of the circumstances. *See Martin*, 157 F.3d at 54. So for example, if the assistance of another law enforcement officer had been sought, we would have been sympathetic to an argument that some delay in obtaining that assistance was reasonable. The same would be true if some overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case. We also recognize that there may be occasions where the resources of law enforcement are simply overwhelmed by the nature of a particular investigation, so that a delay that might otherwise be unduly long would be regarded as reasonable. The circumstances in *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), are illustrative. There the government seized over 1000 packages from ten selected post offices in Hawaii as part of a joint state/federal task force assembled to slow the flow of drugs mailed from Hawaii. *Id.* at 416 (Alcaron, C.J., dissenting). Within two days of their seizure, the packages were transported to a police station and exposed to drug-sniffing dogs. Officials proceeded to seek search warrants for "441 packages—an unanticipated flood of packages which were alerted by the dog." *Id.* at 417. After mobilizing available resources, they began preparing warrant applications at the rate of seventy-five per week, *id.*, a

12

rate of one warrant every seventy-five minutes, *id*. at 418. Nevertheless, despite this effort, there were delays of between seven and twenty-three days between the seizures and issuance of warrants. *Id*. at 416. While a split panel of the Ninth Circuit concluded that the delays were unreasonable, we agree with the dissenting judge that the evidence in the case demonstrated "legitimate and practical reasons for the delay in processing the flood of warrants to search the suspicious packages seized." *Id.* at 418.

By contrast, the present case involved the seizure of a single hard drive. No effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush. Under these circumstances, the twenty-one-day delay was unreasonable. Because we conclude that the motion to suppress should have been granted, we reverse the judgment of conviction and remand the case to the district court for further proceedings consistent with this opinion. This disposition makes it unnecessary for us to reach the procedural and substantive challenges to the seventy-eight-month sentence imposed by the district judge.

**VACATED and REMANDED.**