FILED

OCT 22 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br>v.<br><br>FRANK MURINKO,<br><br>    Defendant - Appellant. | No. 09-30430<br><br>D.C. No. 2:09-cr-00027-JLQ-1<br>Eastern District of Washington,<br>Spokane<br><br><br>ORDER |

Before: NOONAN, THOMPSON and BERZON, Circuit Judges.

The Memorandum Disposition filed in this case on September 10, 2010 is

withdrawn.  The Memorandum Disposition filed with this Order replaces the

withdrawn Memorandum Disposition.

The appellant's Petition for Rehearing is denied.

No further petitions for rehearing may be filed in this case.

FILED

OCT 22 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FRANK MURINKO,

Defendant - Appellant.

No. 09-30430

D.C. No. 2:09-cr-00027-JLQ-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, Senior District Judge, Presiding

Argued and Submitted August 4, 2010
Seattle, Washington

Before: NOONAN, THOMPSON and BERZON, Circuit Judges.

Frank Murinko ("Murinko") plead guilty to possession of child

pornography, 18 U.S.C § 2252(a)(4)(B), transportation of child pornography, 18

U.S.C. § 2252(a)(1), and forfeiture, 18 U.S.C § 2253. He appeals the district

court's denial of his motion to suppress evidence of child pornography obtained

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

from his computer and incriminating statements he made to law enforcement. We review the district court's denial of a motion to suppress de novo and its factual findings for clear error. *United States v. Diaz*, 491 F.3d 1074, 1077 (9th Cir. 2007). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

*Consent*

Murinko contends his consent to the search and seizure of his computer was invalid because it was not voluntary or knowing. We disagree. Murinko concedes that the FBI agents did not engage in any explicit coercion during the in-home interview. He also concedes that the agents repeatedly advised him that he was not under arrest, was not obligated to talk, could ask them to leave, and did not have to consent to any search. *See United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009). Murinko was also advised that a forensic search of his computer would be made, and he signed a written consent form acknowledging that he gave his consent "freely and voluntarily."

When Murinko asked whether consenting to the search of his computer could place him in jail, the FBI Agents answered truthfully that it could. Murinko consented to the search and seizure anyway. When Murinko asked if he could retrieve his family photos from his computer and was told that he could not, he did not revoke consent. Moreover, the district court found "[n]o evidence . . . of any

2

coercion during the one and a half hours" that the agents were in Murinko's home. There is no credible evidence that Murinko's consent was anything other than voluntary and knowing.

*Search*

We reject Murinko's contention that the FBI's delay in obtaining a search warrant and forensically searching his computer violated his Fourth Amendment possessory interest. Murinko's reliance on *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) and *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988) is misplaced. *Mitchell* and *Dass* both involved warrantless seizures based on probable cause, not consent.

Murinko consented to a forensic search of his computer. That Murinko called the FBI asking again for his family photos from his computer makes no difference in this case. Murinko initially consented to the search of his computer and did not revoke his consent after being told, the first time, that he could not retrieve his family photos. Although the record contains conflicting testimony concerning the date of Murinko's call to the FBI, the district court found that he did not call to inquire about the status of the computer search and to request again the return of his photos until after the FBI had already obtained a search warrant. This finding by the district court is not clearly erroneous. There is testimony to

3

support it, as well as reason to discount the conflicting testimony as mistaken or vague. Thus, whether Murinko revoked his consent at that time does not matter. The search of his computer was "conducted within the time period mandated by the search warrant." Murinko suffered no Fourth Amendment violation.

*Statements*

Murinko contends that his incriminating statements should have been suppressed because he was in custody for Miranda purposes during the initial interview at his home and the subsequent interview at the FBI office. The record, however, shows that neither interview was custodial.

Murinko voluntarily agreed to both interviews. He invited the FBI agents into his home for the first interview and suggested that the second interview take place at the FBI office rather than his home. At both interviews, Murinko was repeatedly told that he was not under arrest, did not have to answer questions, and was free to leave or end the interview at anytime.

During the in-home interview, the FBI agents did not show force, brandish their weapons, or isolate Murinko in any part of his home. *Cf. United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008). During the second interview, Murinko sat near the exit door of the FBI interview room and the agents demonstrated that

4

the door was unlocked and reiterated that he was free to leave anytime. *See United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001).

Nothing in the record suggests that the duration of the interviews was excessive or that any undue pressure was exerted on Murinko. A reasonable person would have felt free to leave or terminate either interview. *Id.* at 1066-67. The district court did not err in denying Murinko's request to suppress his incriminating statements.

*Interrogation Technique*

In this appeal, Murinko contends for the first time that the agents deliberately employed the two-step interrogation method condemned by *Missouri v. Seibert*, 542 U.S. 600 (2004). We have discretion to consider this new argument only if it involves plain error that affects substantial rights. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732-35 (1993).

As a threshold matter, Murinko failed to address the plain error requirement in his briefing and has, therefore, abandoned the argument. *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Even if this were not the case, Murinko's attempt to transform three interviews over a two-year period into one continuous interview with an ineffective midstream Miranda warning lacks merit. There is no evidence that the agents employed an unlawful

5

two-step interrogation method, or any other improper strategy, to diminish the effectiveness of Miranda.

As discussed above, Murinko was not entitled to Miranda warnings during his first and second interviews because they were not custodial. And while the third and final interview at the FBI office was custodial, Murinko immediately received Miranda warnings before he was questioned. Murinko's incriminating statements were voluntary and not coerced.

We conclude that the district court did not err in denying Murinko's motion to suppress.

**AFFIRMED.**