[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12255
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-20331-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BARRY K. WHALEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 16, 2011)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Barry Whaley appeals his conviction for possession of child pornography,

18 U.S.C. § 2252(a)(4)(B). On appeal, Whaley challenges the denial of his motion to suppress evidence obtained from a search of his laptop computer. He argues that the initial search of his computer exceeded the scope of his consent to the search. Whaley also contends that law enforcement officers acted with unreasonable delay in conducting a forensic search of the hard drive. For the reasons stated below, we affirm.

I.

At the suppression hearing, the government's witnesses testified to the following facts. On June 26, 2008, Sergeant Mark Schoenfeld and Detective Ivette Dominguez of the Miami Beach Police Department were conducting an address check of registered sex offenders. Under Florida law, all sex offenders must notify the state of any change in address within 48 hours. When Schoenfeld and Dominguez arrived at the apartment that Whaley had listed as his address, they discovered that it had been destroyed in a fire over a week before their visit. Whaley had failed to register a new address within 48 hours of the fire.

When Dominguez returned to the police station, she spoke with Sergeant Howard Bennett, the detective who had investigated the apartment fire. Bennett recalled speaking to Whaley at the scene of the fire, but he explained that Whaley had identified himself as "Barry Wilson." Bennett contacted Whaley, and Whaley

2

agreed to come to the police station for an interview.

Whaley arrived at the police station later that day. At first, Whaley continued to identify himself as Barry Wilson, but when Bennett confronted him with his flyer from the Florida Department of Law Enforcement's sex offender registry, Whaley admitted that he had provided a false name. Whaley was placed under arrest for giving a false name in connection with a law enforcement investigation and for failing to comply with Florida's sex offender notification law.

While the arrest report was being written, Whaley expressed concern about a laptop computer that he had left in his vehicle, which was parked outside the station. He explained that the computer was particularly valuable because it had a flight simulator program that was used to train airplane pilots. Schoenfeld expressed interest in the program because he had piloting experience. Whaley offered to show the flight simulator to Schoenfeld if Schoenfeld would bring the computer into the police station. At that point, Schoenfeld, Sergeant Jorge Alessandri, and Special Agent Tim Devine retrieved the computer from Whaley's vehicle.

After Schoenfeld brought the computer into the police station, he and Whaley continued to discuss the flight simulator program. Whaley told

Schoenfeld to turn on the computer so that he could show Schoenfeld the flight simulator. When Schoenfeld started the computer, he discovered that it was password-protected. Whaley offered to enter the password, so Schoenfeld removed his handcuffs, and Whaley typed the password into the computer.

Because the mouse pad on the laptop was not working. Schoenfeld had to scroll through each icon individually. He used the "Tab" key to move from icon to icon until he reached an icon entitled, "auto racing 13." He saw the word "racing" and believed that the icon would be the flight simulator program, so he hit the "Enter" key to open it. There was another icon on the desktop entitled, "Microsoft Flight Si," but Schoenfeld explained that he did not notice it at the time.

After Schoenfeld opened the "auto racing 13" icon , a video began to play. It immediately was apparent that the video depicted child pornography. After the video had been running for 20 or 25 seconds, Whaley reached over and pressed the power button on the computer, sending it into hibernation mode. Whaley stated, "that's nothing, that's nothing." Schoenfeld replied, "come on, Barry, I already saw it. Put the code back in." Whaley re-entered his password, and the video resumed playing. Schoenfeld showed the video to Alessandri and Devine, who confirmed that it was child pornography.

At that point, Dominguez read Whaley his *Miranda*[1] rights. Whaley indicated that he had taken Xanax and Lithium that morning, but Dominguez, Bennett, Schoenfeld, and Alessandri all testified that Whaley seemed coherent and did not appear to be under the influence of drugs. Alessandri and Devine took Whaley into another room to interview him concerning the video that had been discovered on the computer. During the interview, Whaley admitted that he had downloaded the video knowing that it was child pornography. Alessandri and Devine gave Whaley a consent-to-search form, and asked him to read it carefully. Whaley then consented in writing to a search of the computer. The officers seized Whaley's computer but did not arrest him for possession of child pornography at that time. Whaley subsequently left a series of voice mail messages for the officers. Whaley stated that he wanted the officers to return his computer, but he indicated that the officers could retain the computer's hard drive.

The forensic search of Whaley's computer was conducted by the United States Secret Service. Special Agent Timothy Aucoin testified that the computer's hard drive was digitally imaged in July 2008, just one month after it was seized, but the search did not occur at that time. Aucoin did not receive the final report on the search until December 2008, but he estimated that the actual search may have

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

occurred in August or September. He explained that the search may have taken some time because it was a campaign year and the Secret Service's resources were focused on protecting the presidential candidates.

A magistrate issued a report and recommendation concluding that Whaley's motion to suppress should be denied. As an initial matter, the magistrate determined that the officers had probable cause to arrest Whaley for providing a false name during an arson investigation and for failing to comply with Florida's sex offender registration law. The magistrate also observed that the officers retrieved the computer in response to Whaley's own requests and that Whaley agreed to show Sergeant Schoenfeld the flight simulator program and voluntarily entered his password into the computer. The magistrate found that the initial click on the "auto racing 13" icon did not exceed the scope of Whaley's consent because Schoenfeld reasonably believed that icon to be the flight simulator, and discovered the child pornography only inadvertently.

The magistrate concluded that, once the "auto racing 13" icon had been opened, the child pornography was in plain view, and, therefore, the officers could seize the computer for further investigation. The magistrate also reasoned that Whaley had consented to an additional search of his computer when he re-entered his password. Even if his consent was tainted by Schoenfeld's request that he

6

re-enter his password, the magistrate concluded that any coercive taint had dissipated by the time that Whaley signed the consent-to-search form during his interview with Alessandri and Devine. Accordingly, the magistrate found no Fourth Amendment violation in regards to the initial search and seizure of Whaley's computer.

The magistrate also concluded that any delay between the seizure of the laptop and the forensics search was not unreasonable. The magistrate noted that Whaley had voluntarily consented to the search of his laptop. Although he later requested the return of his laptop, the magistrate noted, he stated that the officers could keep his hard drive. The magistrate pointed out that the hard drive was digitally imaged for a forensics search in July 2008, less than one month after the computer was seized. Under the circumstances, the magistrate concluded that there had been no unreasonable delay with respect to the search of the hard drive. Accordingly, the magistrate recommended that Whaley's motion to suppress be denied.

Whaley filed objections to the magistrate's report, but the district court overruled his objections and adopted the magistrate's report in its entirety. Whaley entered a conditional plea of guilty, preserving his right to appeal the denial of his motion to suppress.

II.

A district court's denial of a motion to suppress presents a mixed question of law and fact. *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007). We review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *Id.*

Generally, the Fourth Amendment requires that officers obtain a warrant before conducting a search. U.S. Const. amend. IV. A warrant is not needed, however, if the defendant voluntarily consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973). Whether a defendant's consent is voluntary is judged based on the totality of the circumstances. *Id.* at 227, 93 S.Ct. at 2047-48. Relevant factors include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedure; (3) the extent and level of the defendant's cooperation with police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

A defendant may place limits on the scope of his consent to a search. *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990). The scope of a

8

defendant's consent is judged according to a standard of objective reasonableness. *Id.* The question is "what a police officer could reasonably interpret the consent to encompass." *Id.* The scope of the actual consent restricts the permissible boundaries of a search in the same manner as the specifications in a warrant. *Id.*

"The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). Before a seizure is authorized under the plain view doctrine, the officers must have probable cause to believe that the item is contraband. *Id.* If the incriminating nature of the item is not immediately apparent, then the seizure cannot be justified under the plain view doctrine. *Id.*

In this case, Whaley permitted Schoenfeld to use his computer, but only for the limited purpose of viewing the flight simulator program. We discern no clear error in the magistrate's finding that Schoenfeld was, in fact, searching for the flight simulator when he opened the "auto racing 13" icon. Because the laptop's mouse pad was not working, Schoenfeld had to scroll through the icons one by one. Therefore, it is plausible that he did not notice the "Microsoft Flight Si" icon at the time. If Schoenfeld's interest in the flight simulator was actually a pretext

for conducting a search for contraband, he likely would not have clicked on the "auto racing 13" icon because the file name was not suggestive of child pornography or other illegal materials. And, in fact, there were other icons on the computer with more suggestive titles that Sgt. Schoenfeld did not click on. These included "beautiful kiss," "girls gone wild9best o...," etc.

The key question in this case is whether an officer exceeds the scope of a an individual's consent to search for a particular computer file when the officer opens another file in the reasonable, though mistaken belief, that it is the file that was the subject of the individual's consent. Although we do not have any published opinions directly on point, other Circuits have decided cases involving similar facts. In *United States v. Walser*, 275 F.3d 981 (10th Cir. 2001), an agent discovered images of child pornography on the defendant's computer while executing a warrant to search for evidence of drug activity. *Id.* at 983-85. The Tenth Circuit held that the agent did not exceed the scope of the search warrant because (1) he discovered the child pornography inadvertently while following a search methodology calculated to find evidence related to drug offenses, and (2) he immediately halted his search and obtained a new search warrant before looking for more evidence of child pornography. *Id.* at 986-87. The Seventh Circuit reached the identical result in a case involving similar facts. *United States*

10

*v. Mann*, 592 F.3d 779, 782-86 (7th Cir. 2010) (concluding that detective did not exceed scope of warrant to search for evidence of voyeurism when he inadvertently discovered child pornography during the search); *see also United States v. Burgess*, 576 F.3d 1078, 1092-95 (10th Cir. 2009) (holding that agent who obtained search warrant for computer records of drug crimes did not exceed the scope of the warrant when he inadvertently discovered child pornography).

*Walser*, *Mann*, and *Burgess* all involved searches conducted pursuant to a warrant, rather than searches based on a defendant's consent. Nevertheless, we have explained that a defendant's consent functions in the same manner to the specifications in a warrant. *See Strickland*, 902 F.2d at 941. Here, Schoenfeld discovered the child pornography inadvertently while searching, with Whaley's consent, for the flight simulator program. After Schoenfeld discovered the illicit video, the officers sought and obtained Whaley's consent before opening any additional programs. Accordingly, we conclude that the initial opening of the "auto racing 13" icon did not exceed the scope of Whaley's consent.

Once Schoenfeld clicked on the "auto racing 13" icon, the child pornography was in plain view. At that point, the officers had probable cause to seize the computer for further investigation. *See Smith*, 459 F.3d at 1290. Whaley also consented to a search of the computer in writing. Whaley contends that his

11

capacity to consent was impaired because he had taken Xanax and Lithium that morning. However, Dominguez, Bennet, Schoenfeld, and Alessandri all testified that Whaley was coherent, was able to understand what was happening, and did not appear to be intoxicated. Therefore, the district court did not clearly err in finding that Whaley's consent was knowing and voluntary. Accordingly, the district court properly concluded that the initial search and seizure of Whaley's computer did not violate the Fourth Amendment.

## III.

As noted above, in considering the district court's denial of a motion to suppress, we review the district court's factual determinations for clear error and its application of the law to the facts *de novo*. *Delancy*, 502 F.3d at 1304. We have explained that an otherwise lawful seizure can violate the Fourth Amendment if the police act with unreasonable delay in securing a search warrant. *Mitchell*, 565 F.3d at 1350. "The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis." *Id.* at 1351 (quotations omitted). The reviewing court must carefully balance the government's interests against the defendant's possessory interest in the item. *Id.*

In *Mitchell*, law enforcement agents interviewed Mitchell at his residence after identifying him as a possible target in a child pornography investigation. *Id.*

at 1348-49. The agents asked Mitchell whether there was child pornography on his desktop computer, and Mitchell responded, "yes, probably." *Id.* at 1349. At that point the agents seized the computer's hard drive, apparently without obtaining the consent of Mitchell. *See id.* The agents did not apply for a warrant to search the hard drive until 21 days later. *Id.*

On appeal, we observed that Mitchell had a substantial possessory interest in the hard drive because "[c]omputers are relied upon heavily for personal and business use." *Id.* at 1351. We explained that Mitchell's admission that the computer "probably" contained child pornography diminished, but did not eliminate, his possessory interest in the hard drive because the hard drive likely contained other, non-contraband items, and because the agents did not know for sure whether the hard drive contained child pornography. *Id.* In contrast to Mitchell's "substantial" possessory interest, we concluded that the government's justification for the delay—that the case agent had to attend a training conference—was not particularly compelling. *Id.* at 1351-52. Accordingly, we held that the delay in searching Mitchell's hard drive was unreasonable. *Id.* at 1352-53.

In this case, the officers seized Whaley's laptop computer on June 26, 2008. The computer's hard drive was digitally imaged in July 2008, but the forensic

13

search did not occur at that time. Special Agent Aucoin was not sure when the hard drive was searched, but he suggested that it may have occurred in August or September. Thus, the period of delay in this case likely was significantly longer than the 21-day delay at issue in *Mitchell*.

Nevertheless, this case is distinguishable from *Mitchell* in a number of respects. Mitchell admitted to the agents that his hard drive "probably" contained child pornography, but the agents did not know whether his admission was accurate. *See Mitchell*, 565 F.3d at 1349, 1351. By contrast, in this case, the officers already knew that the hard drive contained child pornography before they seized the computer. Second, the government's justification for the delay is somewhat stronger in this case than in *Mitchell*. The forensic search of Whaley's hard drive was performed by the United States Secret Service, and, during the time period in question, the Secret Service's resources were strained because the agency needed to provide security for all the candidates in the 2008 Presidential election. Third, and most importantly, Whaley consented to a search of his hard drive, and he later left a series of voice mail messages for the officers in which he stated that the officers could retain his hard drive. By consenting to the officers' continued possession of the hard drive, Whaley essentially waived his possessory interest in the hard drive. We conclude that any delay in searching the hard drive

14

did not unreasonably interfere with Whaley's possessory interest.

Accordingly, after a review of the record and the parties' briefs, we affirm.

**AFFIRMED.**