[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13259

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MULLER VEDRINE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20512-BB-1

_____

2                    Opinion of the Court                    20-13259

——————————————

No. 21-13624

——————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MULLER VEDRINE,

Defendant-Appellant.

——————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20512-BB-1

——————————————

Before BRANCH and LUCK, Circuit Judges, and SANDS,* District
Judge.

PER CURIAM:

———————————

* Honorable W. Louis Sands, United States District Judge for the Middle
District of Georgia, sitting by designation.

Muller Vedrine appeals his convictions for five fraud-related crimes.[1] He first argues that the district court erred in denying his motion to suppress because (A) the 14-day delay between his arrest and the issuance of the search warrant for his cell phones was unreasonable; (B) the evidence obtained as a result of the second search warrant executed on his residence should have been excluded as "fruit of the poisonous tree"; and (C) the delay in the government's review of the data extracted from his cell phone was unreasonable. The government argues that neither delay was unreasonable; and, therefore, the search warrant for Vedrine's apartment did not rely on illegally obtained evidence.

Second, Vedrine argues that the district court erred in ordering restitution under the Mandatory Victims Restitution Act ("MVRA") to Capital One which did not qualify as a victim. The government responds that we should dismiss the restitution claim because Vedrine did not timely file his notice of appeal from the amended judgment awarding restitution.

For the reasons below, we affirm the district court's denial of Vedrine's motion to suppress and dismiss his restitution claim as

---

[1] Following a bench trial, the district court convicted Vedrine of two counts of possession of 15 or more unauthorized devices with intent to defraud in violation of 18 U.S.C. § 1029(a)(3), two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of possession of device-making equipment with intent to defraud in violation of 18 U.S.C. § 1029(a)(4). He was sentenced to a total of 84 months' imprisonment, followed by 3 years' supervised release.

untimely.    Finally, because the amended judgment contains a clerical error, we vacate and remand for the limited purpose of correcting the clerical error.[2]

## I.    Background

### A. Facts

Vedrine was arrested on June 4, 2019, for driving a stolen vehicle.    During an inventory search of the vehicle, officers identified seven re-encoded credit cards,[3] two fake IDs with Vedrine's photo but the personal identifiable information of other individuals, and two Target credit card applications.    Officers also seized three cell phones.    His request for the return of his phones was denied.

On the day of Vedrine's arrest, the Miami-Dade Police Department contacted Secret Service Special Agent Natalya Kaczmarczyk and informed her of Vedrine's fraudulent items.

---

[2] Vedrine's indictment listed counts three and four as aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).    The district court's judgment and amended judgment, however, listed count three as a violation of 18 U.S.C. § 1028(a)(1) rather than 1028A(a)(1).

[3] Secret Service Special Agent Natalya Kaczmarczyk explained what a re-encoded credit card was during the motion to suppress hearing: "A re-encoded card is a card that, on the front, the card number does not match what is on the magnetic strip.    So an individual can use a re-encoded card.    It makes it look like you're using the credit card on the front of the card, but when you actually use it it's a different card number that you're using."

Fourteen days after Vedrine's arrest, Kaczmarczyk obtained a search warrant for the seized cell phones and data extraction was performed. However, after the extraction, the data was not analyzed for 21 days. Before the data was fully analyzed, a second search warrant was executed on Vedrine's apartment and officers obtained additional incriminating evidence of fraud.

A grand jury indicted Vedrine for five fraud-related crimes. Vedrine moved to suppress evidence from the searches of his cell phones and apartment. He advanced three arguments. First, he argued that the 14-day delay between his arrest (June 4) and the issuance of a search warrant for his three cell phones (June 18) was unreasonable in violation of the Fourth Amendment. Second, he argued that the search warrant for his apartment lacked probable cause because it relied on information gained from the unreasonable search of his cell phones. Finally, he argued that the warrant for his phones was executed unreasonably because the data from his cell phones was not analyzed until 21 days after extraction.

At the hearing on the motion to suppress, Agent Kaczmarczyk testified on the progression and timing of her investigation. She began by interviewing Vedrine on the day of his arrest and requesting security footage from Target for the credit card applications. She received the Target footage three days later, but a security firewall initially blocked her access. Alongside her investigation into Vedrine, Kaczmarczyk also engaged in investigative duties in other cases that required her attention.

Kaczmarczyk submitted a first draft of a search warrant for Vedrine's three cell phones to the Assistant United States Attorney ("AUSA") on June 11, 2019.  On June 13, 2019, the AUSA sent Kaczmarczyk requested revisions to the search warrant.  After revisions and additional investigation, Kaczmarczyk finalized a search warrant that was signed by a magistrate judge on June 18, 2019.

The Miami-Dade Police Department released the cell phones to Kaczmarczyk on June 27, 2019, and the data extraction occurred the next day.  Twenty-one days later, on July 19, 2019, another agent conducted a forensic examination of the extracted data.  The agent completed his final report on August 5, 2019.

Kaczmarczyk was pursuing other leads in the case while she waited on the final report from the cell phone extraction.  Through her investigation, she discovered an apartment that Vedrine procured by supplying management with fraudulent information, and she obtained a search warrant to search the residence. Kaczmarczyk executed the search warrant on the residence with eight other Secret Service agents and three other individuals on August 1, 2019.

At the close of the evidentiary hearing, the district court denied Vedrine's motion to suppress.  The district court reasoned that, although Vedrine had a possessory interest in the cell phones, given the government's efforts, there was "not a significant interference" with Vedrine's possessory interest and the 14-day delay between the lawful seizure of the phones and the search

warrant was reasonable. Relatedly, the district court held that evidence seized from Vedrine's home was not due to be suppressed because there was no constitutional violation. Finally, the district court rejected Vedrine's argument that the delay between the extraction of the data from his phones and the examination of that data affected a possessory interest.

Vedrine proceeded to a bench trial, and he was convicted as charged. The district court imposed a total sentence of 84 months' imprisonment, followed by three years' supervised release. The district court entered its judgment and sentence against Vedrine on August 17, 2020, but because the parties did not agree on restitution, it deferred "[t]he determination of restitution . . . until October 2, 2020 . . . ." Vedrine filed a timely notice of appeal from the judgment.

After a hearing, the district court entered an amended judgment ordering restitution on November 13, 2020. Vedrine did not file a notice of appeal from the amended judgment. Nonetheless, Vedrine argued that the district court erred in granting restitution as part of his briefing on appeal. In its response brief, the government highlighted Vedrine's procedural error and sought dismissal of the restitution claim. Vedrine then filed in this Court a "Motion for Leave to File a Belated Appeal" which included a notice of appeal from the district court's amended judgment. We denied his motion as unnecessary and forwarded his notice of appeal to the district court. And we allowed the

government to file a sur-reply brief to address the belated appeal from the amended judgment.

## II.    Standard of Review

"We review 'a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed *de novo* and findings of fact reviewed for clear error, in the light most favorable to the prevailing party in district court.'" *United States v. Laist*, 702 F.3d 608, 612 (11th Cir. 2012) (quoting *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007)).

A defendant's notice of appeal in a criminal case must be filed no later than 14 days after the challenged order is entered. *See* Fed. R. App. P. 4(b)(1)(A).  In the criminal context, Rule 4(b) is not jurisdictional because it is not grounded in a federal statute. *United States v. Lopez*, 562 F.3d 1309, 1313 (11th Cir. 2009).  Nevertheless, we must apply Rule 4(b)'s deadline if the government objects to a defendant's untimely notice of appeal. *Id.* at 1314.

## III.    Discussion

### A.  Denial of Motion to Suppress

Vedrine claims that the district court erred in denying his motion to suppress.  He claims suppression was merited for three reasons.  We address each in turn, but reach the same conclusion for all: the district court did not err.

#### 1.  Issuance of Search Warrant for Cell Phones

20-13259            Opinion of the Court            9

Vedrine argues that the 14-day delay between his arrest and the issuance of the search warrant for his three seized cell phones was unreasonable and violated the Fourth Amendment. We disagree.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend IV. "The touchstone of the Fourth Amendment is reasonableness . . . ." *United States v. Knights*, 534 U.S. 112, 118 (2001). Even if a seizure is lawful at its start, it may become unlawful if "the police act with unreasonable delay in securing a warrant." *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (quotations omitted).

Reasonableness is not clear-cut. *See Laist*, 702 F.3d at 616 (noting that because there is no "*per se* rule of unreasonableness," the "devil . . . is in the details"). Rather, the reasonableness analysis considers "all the facts and circumstances" on a "case-by-case basis" and must balance "governmental and private interests." *Id.* at 613. Relevant factors include: (1) "the significance of the interference with the person's possessory interest," (2) whether the individual consented to the seizure, (3) "the duration of the delay," (4) "the government's legitimate interest in holding the property as evidence," and (5) whether law enforcement "diligently pursue[d] their investigation." *See id.* at 613–14 (quotations omitted). To determine whether law enforcement was diligent, we consider the "nature and complexity" of the investigation, "the quality of the warrant application and the amount of time we expect such a warrant would take to prepare," and "any other evidence proving

or disproving law enforcement's diligence in obtaining the warrant." *Id.* at 614.

Thus, we have held a 21-day delay between seizing a computer hard drive and applying for a search warrant to be unreasonable when the lead agent traveled out-of-state for training and his only justification for the delay in obtaining the search warrant was that he "didn't see any urgency" because the defendant had admitted there was evidence of criminal activity on the hard drive. *Mitchell*, 565 F.3d at 1351–52. But we have held a longer delay of 25 days to be reasonable when a case agent immediately began preparing a warrant, exchanged edits with an AUSA, and included a "very substantial amount of information specifically as to the Defendant's conduct" in the final warrant affidavit. *Laist*, 702 F.3d at 617. Simply put, the factual particulars of each case are decisive.

We now consider the facts of this case.

Vedrine's cell phones were seized after his arrest. His request for the return of his phones was denied. The search warrant for those phones was issued 14 days after his arrest. Thus, Vedrine clearly retained a possessory interest in the cell phones, which was interfered with when the government kept his phones.

The government's legitimate interest in holding the phones as evidence is also indisputable. Police arrested Vedrine in a reportedly stolen vehicle and found substantial evidence of sophisticated fraud and identity theft. As such, the government

had every reason to believe that one of Vedrine's three phones contained criminal evidence.

Additionally, Kaczmarczyk exhibited diligence throughout her investigation.  Despite reoccurring obligations that limited her time and energy, she: (1) immediately began investigating Vedrine, (2) started drafting a search warrant affidavit within two days, (3) requested and examined pertinent surveillance video, (4) followed leads, (5) exchanged edits with the AUSA on the search warrant affidavit and application, (6) drafted and submitted a memorandum to obtain the cell phones from the Miami-Dade Police Department, and (7) completed a search warrant affidavit that included pertinent information from the arrest of Vedrine as well as information from the Target surveillance video.[4]  Kaczmarczyk took these steps despite her necessary commitment to other important

---

[4] The record establishes that Kaczmarczyk began investigating Vedrine the day he was arrested.  She interviewed Vedrine and requested surveillance video from Target that same day.  Within two days she began drafting her search warrant affidavit.  She stopped drafting, however, because she wanted to include information from the Target video footage.  Target sent the footage on June 7, but it was blocked by a security firewall, and she had to wait for the information technology department to unblock it.  On June 11, Kaczmarczyk submitted a draft warrant affidavit to the AUSA.  The AUSA requested changes and Kaczmarczyk edited the affidavit.  All the while, Kaczmarczyk was following up on leads in the case and conducting normal investigative duties.  On June 17—in anticipation of the search warrant—she drafted and submitted a memo to the Miami-Dade Police Department to retrieve Vedrine's phones.  On June 18, she submitted the final search warrant application and obtained the warrant.

investigations.[5]  This is a far cry from delaying the warrant process because she "didn't see any urgency." *Mitchell*, 565 F.3d at 1351. Rather, these facts resemble those of the 25-day delay we held reasonable in *Laist*. 702 F.3d at 617.

Based on the facts in this record, we hold that the 14-day period between the seizure of the phones and issuance of the warrant was reasonable.  Accordingly, the district court did not err in denying the motion to suppress on this ground, and we affirm.

### 2.  Search Warrant for Vedrine's Apartment

Vedrine argues that because the 14-day delay between his arrest and the issuance of the search warrant for his three cell phones was "unreasonable," evidence seized as a result of the search warrant for his apartment—which relied, in part, on evidence from his cell phones—must be excluded as "fruit of the poisonous tree."  We disagree.  Because we conclude that the 14-

---

[5] During the 14-day interim between Vedrine's arrest and the issuance of the warrant, Kaczmarczyk also had significant investigatory responsibilities in other cases.  She was called to assist in an arrest on June 5.  She was also "heavily involved in" what "turned[ed] into a federal indictment out of [the Secret Service's] South Dakota office . . . with a big seizure of currency."  And she was responsible for extensive surveillance operations in another large-scale case.  Ultimately, because of the "large-scale investigation[s] going on" Kaczmarczyk's schedule included working through weekends and on her birthday such that she "might have had one day off" between June 4 and June 18.  We include these facts for explanatory purposes, and expressly decline to adopt a position as to what amount of "other duties" would allow an officer to delay his or her other investigations.

day delay in procuring the search warrant for the phones was reasonable, there is no "poison" for Vedrine's "fruit of the poisonous tree" argument. This argument arrives dead on the vine. Accordingly, we affirm the district court's denial of the motion to suppress on this ground.[6]

### 3. Execution of Search Warrant for Cell Phones

Vedrine argues that the evidence from his cell phones should have been suppressed because the search warrant for the phones was "executed" improperly. Specifically, he argues that the period from data extraction (June 28) to the forensic examination of that data (July 19) was part of the execution of the warrant and was an "unreasonable" delay. We disagree.

Federal Rule of Criminal Procedure 41(e) governs warrant execution. To start, Rule 41(e)(2)(A)(i) requires that the warrant be executed "within a specified time no longer than 14 days." Rule 41(e)(2)(B) controls warrant execution for electronically stored information, and it provides that "[t]he time for executing the warrant in Rule 41(e)(2)(A) . . . refers to the seizure or on-site

---

[6] We note that the government also has a compelling argument under the independent source doctrine. *See United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012) ("[E]vidence obtained from a *lawful source that is independent* of any Fourth Amendment violation is admissible . . . ." (emphasis added)). That is, even if we were to assume that the evidence from Vedrine's phone was "fruit of the poisonous tree," the other evidence that Kaczmarczyk independently obtained was sufficient to satisfy the "probable cause" standard for a search warrant for Vedrine's apartment.

copying of the media or information, *and not to any later off-site copying or review*." Fed. R. Crim. P. 41(e)(2)(B) (emphasis added). Finally, "[t]he general touchstone of reasonableness which governs Fourth Amendment analysis . . . [also] governs [warrant execution]." *United States v. Ramirez*, 523 U.S. 65, 71 (1998).

The search warrant for Vedrine's cell phones was issued on June 18. The warrant had an execution deadline of July 1. After navigating procedural hurdles with the Miami-Dade Police Department, Kaczmarczyk received the cell phones on June 27, and promptly delivered them to the forensics lab. On June 28, the data extraction was completed. However, the data was not reviewed or forensically analyzed until 21 days later.

Law enforcement complied with Rule 41(e) and completed the data extraction within Rule 41(e)(2)(A)(i)'s 14-day timeline. The rule clearly allows for the "later review" of timely-extracted data—*i.e.*, the July 19 forensic examination. *See* Fed. R. Crim. P. 41(e)(2)(B).

Based on the plain language of the rule, we agree with our sister circuits that once the data is seized and extracted by law enforcement, the warrant is considered executed for purposes of Rule 41, and under Rule 41(e)(2)(B), law enforcement may analyze that data at a later date. *See United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018) ("[U]nder Rule 41, an execution period specified in a warrant applies to the time to seize the device or to conduct on-site copying of information from the device. This deadline does not apply to the time to analyze and investigate the

contents of the device off-site."); *United States v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013) ("[U]nder Federal Rule of Criminal Procedure 41(e)(2)(B), a warrant for electronically stored information is executed when the information is seized or copied . . . . Law enforcement is permitted to decode or otherwise analyze data on a seized device at a later time.").

Despite the rule's plain language, Vedrine argues that the Fourth Amendment requires the government to review the extracted data within a "reasonable" time period. In support, he cites out-of-circuit, district court authority to argue that the "later review" was "unreasonable" under the Fourth Amendment.

Even assuming arguendo that the "later review" of the data must be done within a "reasonable" time period, Vedrine's first problem is that he offers no convincing evidence of unreasonable action in this case. Additionally, the authority he cites found law enforcement acted unreasonably in reviewing the extracted data only when the government had "no plans whatsoever to *begin* review of that data" after 15 months. *United States v. Metter*, 860 F. Supp. 2d 205, 212, 215 (E.D.N.Y. 2012). A months-long delay is clearly different than the government *actually undertaking* a forensic review of the data within a matter of weeks—as was done in Vedrine's case. This scenario is eminently reasonable considering the "substantial amount of time" that data review can require. Fed. R. Crim. P. 41(e)(2), Advisory Committee Note, 2009

Amendments.[7]  Because Vedrine presents only a generalized time grievance and puts forth no persuasive evidence of unreasonable action, we affirm the district court's denial of the motion to suppress on this ground.

## B.  Restitution

Vedrine argues that the district court erred in awarding restitution because Capital One does not qualify as a "victim" under the MVRA.   Because the government is correct that Vedrine's notice of appeal from the amended judgment imposing restitution was untimely, we are compelled to dismiss this claim.

To appeal a lower court's final decision to this court, appellants in criminal cases must follow Federal Rule of Appellate

---

[7] The advisory committee contemplated Vedrine's factual scenario:

> [T]he Rule limits the . . . execution period to the *actual execution of the warrant and the on-site activity*. While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a 'one size fits all' presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information.

Fed. R. Crim. P. 41(e)(2), Advisory Committee Note, 2009 Amendments (emphasis added).  While not binding, we recognize that advisory committee notes are "accorded great weight" in interpreting federal rules.  *Horenkamp v. Van Winkle and Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005).

Procedure 4(b). *See, e.g.*, *Manrique v. United States*, 137 S. Ct. 1266, 1271–74 (2017) (holding that Rule 4(b) requires an appellant to file a separate notice of appeal from an amended judgment even if a notice of appeal from an earlier judgment is already pending). As noted previously, a defendant must file a notice of appeal within 14 days of "the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1). *See also id.* Fed. R. App. P. 4(b)(4) (authorizing district court to extend Rule 4(b)(1)'s deadline for an additional 30 days upon a "finding of excusable neglect or good cause"). Rule 4(b)(2) provides that when a notice of appeal is filed after the court announces its decision but before entry of the formal judgment, it is treated as filed on the date of entry of the judgment. *Id.* Fed. R. App. P. 4(b)(2). Importantly, however, the Supreme Court has held that Rule 4(b)(2) does *not* "come into play" if "the court has not yet decided the issue that the appellant seeks to appeal." *Manrique*, 137 S. Ct. at 1273. In fact, "[Rule 4(b)(2)] does not apply where a district court enters an initial judgment deferring restitution and subsequently amends the judgment to include the sentence of restitution." *Id.*

Rule 4(b)'s filing deadline is not jurisdictional. *Lopez*, 562 F.3d at 1313. Rather, the deadline is treated as a claims-processing rule and the government must seek to enforce the rule or else the objection is waived. *Id.* at 1312. If the government raises the issue, however, we must apply the rule's time limits. *Id.* at 1313–14; *see also id.* at 1313 (noting that "an appellee may object to the timeliness of an appeal for the first time in its merit brief").

Here, following Vedrine's convictions and imposition of sentence, the district court entered a judgment of conviction, but deferred the restitution issue. Vedrine appealed from the initial judgment. Thereafter, the district court entered an amended judgment ordering restitution. Almost a year later, Vedrine filed a notice of appeal from the amended judgment.

We must dismiss Vedrine's restitution claim. *See Manrique*, 137 S. Ct. at 1273; *Lopez*, 562 F.3d at 1313–14. While he timely appealed the district court's denial of his motion to suppress, that notice of appeal could not encompass the district court's later-decided restitution order. *See Manrique*, 137 S. Ct. at 1273. Because his notice of appeal from the amended judgment was nearly one-year delinquent and the government affirmatively seeks dismissal, we must dismiss Vedrine's restitution claim.[8] *See Lopez*,

---

[8] In a last-ditch effort, Vedrine argues—for the first time in his reply brief—that his procedural error should be overlooked because it resulted from ineffective assistance of counsel. Vedrine faces two insurmountable hurdles. First, "[w]e will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quoting *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002)). Second, even if Vedrine were to overcome our first rule, he abandoned the issue by raising it for the first time in his reply brief. *See United States v. Fiallo-Jacome*, 874 F.2d 1479, 1481 (11th Cir. 1989). Accordingly, we do not reach his ineffective assistance claim. Vedrine is free to bring this claim in a properly filed motion to vacate his sentence under 28 U.S.C. § 2255.

562 F.3d at 1313–14 (dismissing appeal for missing Rule 4(b) deadline by 6 days).

For these reasons, we dismiss Vedrine's restitution claim.

## C.  Clerical Error in District Court Judgment

After a bench trial, Vedrine was found guilty of each crime listed in his five-count indictment.  The district court's judgment and amended judgment, however, listed count three as violating 18 U.S.C. § 1028(a)(1) rather than the 18 U.S.C. § 1028A(a)(1)—the statute listed in the indictment and under which Vedrine was tried and convicted.  Therefore, we must *sua sponte* vacate the district court's judgment and remand for the limited purpose of correcting this error in judgment. *See, e.g.*, *United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006) (vacating and remanding when the district court's judgment listed a crime as count two, but the indictment listed the crime as count nine and defendant pleaded guilty to count nine).

## IV.    Conclusion

We dismiss Vedrine's restitution claim because his notice of appeal from the amended judgment resolving the restitution issue was untimely.  We also hold that the district court did not err in denying his motion to suppress evidence from the cell phone and apartment searches.  Finally, we vacate and remand for the limited purpose of correcting the clerical error in count three of the district court's judgment and amended judgment.

AFFIRMED IN PART, DISMISSED IN PART. JUDGMENT VACATED AND REMANDED FOR LIMITED PURPOSE OF CORRECTING CLERICAL ERROR.