[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14764
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00393-CAP-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILIP EMANUEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 21, 2011)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Philip Emanuel appeals his conviction after he conditionally pleaded guilty

to one count of receiving child pornography, in violation of 18 U.S.C. §

2252(a)(2) and (b).  Specifically, Emanuel challenges the district court's denial of his motions to suppress all evidence obtained from him–primarily depictions from his computer, written statements, and oral admissions–during police officers' interview with Emanuel at his home.  On appeal, Emanuel first argues that his consent was not voluntary, and in any event, the computer was retained by the police for a unreasonable period of time, and this retention exceeded the scope of the consent.  Emanuel also argues that the delays of the police violated his constitutional possessory rights in the computer.  He finally argues that his statements to police were inadmissible because he was in custody and did not receive the *Miranda*[1] warnings, and also because the statements were not voluntary.

At the interview, Emanuel told the police that the computer contained images of minors similar to a pornographic picture that his ex-wife had found in her home.  According to the officers, whose testimony the district court found credible, the tone of the interview was "cordial and conversational" and "very laid back."  Emanuel allowed the police to take his computer, and he wrote a consent statement in which he authorized the release of the computer for analysis, asked for help with his problems, and asked that the computer be returned "sooner than

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

later." Emanuel did not revoke this consent or later speak to the officers about retrieving his computer. As a result of administrative and departmental delays, the officer obtained a search warrant for the computer 34 days after it was taken, and the analysis of the computer was completed approximately ten months after the warrant was obtained.

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and the district court's application of law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). The court's factual findings are construed in the light most favorable to the prevailing party. *Id.* at 1235-36.

1. Credibility

Where there is conflicting testimony, we defer to a magistrate judge's credibility determinations "unless [the judge's] understanding of the facts appears to be unbelievable." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation omitted). Additionally, the district court, as factfinder, is entitled to substantial deference in reaching credibility determinations with respect to witness testimony. *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

As to the issue of credibility in the instant case, the testimony of the officers, Allen and Molnar, conflicted with Emanuel's testimony with respect to many aspects of the interview, specifically, the tone of the interview, the behavior of the officers, and statements attributed to the officers. Given the substantial level of deference to the factfinder, we defer to the magistrate's credibility determination, because the magistrate's understanding of the facts of the interview does not appear to be unbelievable. *See Ramirez-Chilel*, 289 F.3d at 749; *McPhee*, 336 F.3d at 1275. Emanuel has failed to show that the magistrate's understanding of the facts is not plausible or permissible, and therefore the officers' testimony as to the facts of the interview should provide the basis for the determination of voluntariness. *See id.*

## 2. Free and Voluntary Consent; Scope of Consent

Emanuel argues that he did not voluntarily give the officers consent to seize and search his computer or to possess the computer for 11 months, but instead contends that his consent and his written statement were "the result of coercion and threats" by the officers. He also asserts that he specifically limited the time for the police to hold the computer by stating that he wanted it returned "sooner than later," and he contends that he made attempts to retrieve his computer from

4

the police.

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures by law enforcement officers. *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002). Under these amendments, "a search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989) (quotations and ellipsis omitted). "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." *Id.* "A consensual search is constitutional if it is voluntary; if it is the product of an essentially free and unconstrained choice." *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004) (quotations omitted). "Voluntariness is a question of fact based on the totality of the circumstances," and the government bears the burden of proving the existence and voluntariness of the consent. *Id.*

Relevant factors in the determination of voluntariness include the presence of coercive police procedures, the extent of the person's cooperation with the officers, the person's awareness of his right to refuse consent, the person's education and intelligence, and the person's belief that no incriminating evidence

will be found. *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Id.* at 1281-82 (quotation omitted). In most cases, we will accord the district court "a great deal of deference regarding a finding of voluntariness, and we will disturb the ruling only if we are left with the definite and firm conviction that the trial judge erred." *Garcia*, 890 F.2d at 359. Because the trial court usually bases its findings on credibility choices resulting from conflicting testimony, relying on the demeanor of witnesses, we "will not overturn the trial judge's finding that [the] consent was voluntary, unless it is clearly erroneous." *Id.*

"A consensual search is confined to the terms of its authorization. The scope of the actual consent restricts the permissible boundaries of a search in the same manner as the specifications in a warrant." *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990) (citations omitted). Further, "[w]hen an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." *Id.* As this Court has held,

> whether there were any limitations placed on the consent given and whether the search conformed to those limitations is to be determined by the totality of the circumstances. The trial court's factual determinations as to these two issues are also due deference on appeal and will not be overturned unless clearly erroneous.

*United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989) (citation omitted).

The record supports the magistrate's conclusion that Emanuel voluntarily consented to the seizure and search of his computer. Accepting the magistrate's findings that the officers, and not Emanuel, testified credibly, the interview occurred in Emanuel's home, Emanuel was not prevented from leaving, and Emanuel did not ask to leave or ask the officers to leave. Emanuel invited the officers inside and cooperatively responded to their questions and requests. Emanuel was not threatened, coerced, restrained, handcuffed, patted down, required to answer questions, physically intimidated, or promised leniency. Although the officers were armed, they never removed their weapons from the holsters. The overall tone of the interview was "cordial," "conversational," and "very laid back." Even though Emanuel exhibited signs of anxiety, he complied with the officers' request for consent to release the computer by composing his own consent statement. Emanuel acknowledged that he had a problem, verbally asked for help, and reiterated in his consent statement that he was asking for help by releasing the computer. Even though the officers did not appear to inform

7

Emanuel of his right to refuse the search, his level of education, intelligence, and work experience diminish the importance of this factor. Emanuel knew there was child pornography on his computer, yet he admitted this to the officers, and nevertheless indicated that he wanted to release the computer to obtain help with his problems. Considering the totality of the circumstances, the relevant factors, and the magistrate's credibility determination, the district court did not clearly err in finding that Emanuel freely and voluntarily consented to the seizure and search of the computer. *See Acosta*, 363 F.3d at 1151; *Purcell*, 236 F.3d at 1281.

In addition, the record supports the finding that the retention of the computer by the police and the overall timing for the completion of the examination was within the scope of Emanuel's voluntary consent. Although in his written consent, Emanuel requested that the computer be returned "sooner than later," he did not place any specific time limit for the completion of the forensic examination. Also, the evidence showed that neither Emanuel nor his attorney revoked, limited, or modified the consent. Emanuel's testimony that he did not contact Allen because he did not have Allen's card, and that he attempted to contact Molnar by telephone, even though he actually saw Molnar in person, is unconvincing to show an attempt to revoke, especially given Emanuel's level of education and intelligence. Also, Emanuel's attorney did not revoke or limit the

8

consent, even though he spoke to Molnar after the interview. Although the scope of Emanuel's consent was not limitless, given the absence of a specific time limit or a revocation, the police officers could reasonably interpret the original consent to encompass the administrative delays encountered both before and after the warrant was obtained. *See Strickland*, 902 F.2d at 941. It does appear that the administrative confusion between Allen and Molnar, and the technical weakness of the APD forensics department, did not reflect favorably on the APD and did delay the investigation both before and after the warrant. However, these delays were unexpected and unintended, and there is no showing that the officers intentionally delayed the investigation or acted in bad faith, which might negate the reasonableness of the delays. Further, Sheikh testified that the average turnaround time for a forensic computer examination was three to six months. Despite the problems, the officers could still reasonably assume that the original voluntary consent, which had not been limited or revoked, encompassed such unexpected and unintended administrative and departmental delays.

3. Violation of Possessory Interest

Emanuel argues that the delays in obtaining the warrant and in completing the examination of the computer were unreasonable and infringed on his

possessory interests under the Fourth Amendment.

In *United States v. Mitchell*, we explained that an otherwise lawful seizure can violate the Fourth Amendment and infringe upon an owner's possessory interests if the police act with unreasonable delay in securing a search warrant. 565 F.3d 1347, 1350 (11th Cir. 2009). "The reasonableness of the delay is determined in light of all the facts and circumstances, and on a case-by-case basis." *Id.* at 1351 (quotations omitted). The reviewing court must carefully balance the government's interests against the defendant's possessory interest in the item. *Id.* In *Mitchell,* police officers seized the hard drive from the defendant's computer, without obtaining his consent. *Id.* at 1349.

Because Emanuel gave his voluntary consent to the seizure and search of his computer, *Mitchell* is inapposite, and the delay before obtaining the warrant did not violate Emanuel's constitutional possessory rights. Similarly, the detention of the computer after the warrant was obtained was based on Emanuel's consent, and did not violate Emanuel's possessory rights.

4.  Custody Determination and Voluntariness of Oral Statements

Emanuel argues that during the interview, he was under sufficient restraint to think that he was in custody and his oral statements should be suppressed because he was not given the *Miranda* warnings. He also contends that, even if he

10

was not in custody, the coercive actions of the officers and the totality of the interview resulted in statements that were not voluntary and should be suppressed.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court in *Miranda* "established that custodial interrogation cannot occur before a suspect is warned of [his] rights against self-incrimination." *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). Statements made in violation of *Miranda* are not admissible at trial. *Miranda*, 384 U.S. at 444-45, 86 S.Ct. at 1612. We have described the test for determining custody as follows:

> A defendant is in custody for the purposes of *Miranda* when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Whether [a defendant] was in custody prior to his formal arrest depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave. The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant. Under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person.

*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations, citations, alteration, and emphasis omitted). We are to consider several factors in determining custody, "including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be

11

compelled." *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (quotation omitted).

If a court determines that the requirements of *Miranda* have been met, it must then determine that any confessions or incriminatory statements made by a defendant were voluntary in order to admit such statements at trial. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1317-18 (11th Cir.), *cert. denied*, 130 S. Ct. 2123 (2010). There are "two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment." *Dickerson v. United States*, 530 U.S. 428, 433, 120 S. Ct. 2326, 2330 (2000). With respect to the admissibility of incriminatory statements and confessions made by a defendant to police, we consider

> the totality of the circumstances, including the details of the interrogation and the defendant's characteristics, when deciding whether a confession was voluntary. [This Court] focus[es] on whether the police overreached, considering factors such as the accused's lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

*Bernal-Benitez*, 594 F.3d at 1319 (citation, quotations, and alteration omitted).

After a review of the record and considering the totality of the circumstances, we conclude that the interview was not a custodial interrogation, Emanuel was not entitled to the *Miranda* warnings, and any statements made by Emanuel were voluntary.

In conclusion, the district court did not err in denying Emanuel's motions to suppress, and we affirm.

**AFFIRMED.**[2]

---

[2] Emanuel's request for oral argument is denied.