*17-2446-cr*
*United States v. Smith*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———

August Term, 2018

(Argued: October 24, 2018    Decided: July 28, 2020)

Docket No. 17-2446-cr

———

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

KIRKLAND SMITH,

*Defendant-Appellant.*

———

B e f o r e :

KATZMANN, *Chief Judge*, KEARSE, *Circuit Judge*, and MEYER, *District Judge*.[*]

The defendant-appellant Kirkland Smith appeals from a judgment of conviction and sentence in the United States District Court for the Northern District of New York (Mordue, *J.*). He primarily contends that the district court erred when it denied his motion to suppress the fruits of a search of a tablet computer that contained child pornography. He also challenges the reasonableness of his sentence. We have previously rejected by summary order

———

[*] Judge Jeffrey Alker Meyer, of the United States District Court for the District of Connecticut, sitting by designation.

Smith's challenges to the district court's denial of his suppression motion, except that we remanded for the district court to conduct a hearing and make findings with respect to whether the police waited for an unreasonably long time before applying for a search warrant after their seizure of Smith's tablet computer. *See United States v. Smith*, 759 F. App'x 62 (2d Cir. 2019). Following the district court's hearing and ruling that the delay was not unreasonable, the appeal has been restored to this panel. We now rule that the police delayed unreasonably long in violation of the Fourth Amendment when they waited without good cause for 31 days to seek a search warrant after seizing Smith's tablet computer. We conclude, however, that the exclusionary rule does not apply because the police's unreasonable delay was due to isolated negligence and because an objectively reasonable police officer would not have known that the delay amounted to a violation of the Fourth Amendment in light of then-existing precedent. We otherwise conclude that the district court's sentence of 212 months of imprisonment was not procedurally or substantively unreasonable. Accordingly, the district court's judgment of conviction and sentence is AFFIRMED.

Judge KEARSE concurs in a separate opinion.

———————

> PAUL D. SILVER (Cyrus P. Rieck, *of counsel*), Assistant United States Attorneys, *for* Grant C. Jaquith, United States Attorney, Northern District of New York, Albany, NY, *for Appellee*.

> JAMES P. EGAN (Molly K. Corbett, *on the brief*), *for* Lisa A. Peebles, Federal Public Defender, Office of the Federal Public Defender, Albany, NY, *for Defendant-Appellant*.

———————

JEFFREY ALKER MEYER, *District Judge*:

It is common for the police to temporarily seize a suspect's personal property if they have probable cause and intend to apply for a warrant to search

2

the property for evidence of a crime. When the police do so, however, the Fourth Amendment requires that they act with diligence to apply for a search warrant.

This appeal primarily requires us to decide if the police failed to act with the diligence that the Constitution demands. The New York State Police seized a tablet that belonged to defendant-appellant Kirkland Smith after a trooper glimpsed an image on its screen that was possibly child pornography. But the police then waited 31 days before applying to a judge for a warrant to search the tablet's contents.

We conclude that, in the absence of extenuating reasons for this month-long delay, it was unreasonably long in violation of the Fourth Amendment. Nevertheless, we decline to apply the exclusionary rule, because the error by the police was due to isolated negligence and because an objectively reasonable officer would not have known in light of existing precedent that the delay violated the Fourth Amendment.

The district court did not otherwise commit procedural or substantive error when it imposed a sentence of 212 months of imprisonment in light of the large amount of child pornography that Smith possessed as well as his history of sexually abusing children. Accordingly, we affirm the judgment of conviction

3

and sentence of the district court.

**BACKGROUND**

*A. The investigation*

On the afternoon of October 30, 2014, Trooper Timothy Snickles of the New York State Police noticed a car pulled off in an embankment on the side of the road near Keene, New York. The driver was defendant-appellant Kirkland Smith. He was hunched unconscious over the steering wheel while the car was still in the "drive" position with the engine running and the doors locked. Snickles knocked on the window for about two minutes before he finally got a response from Smith, who unlocked the doors. Opening one of the doors, Snickles reached in to put the vehicle in "park," turn the engine off, and take the key from the ignition.

There was a strong smell of alcohol, and lying on the passenger seat of the car were plastic wine jugs as well as a Nextbook tablet computer and a cell phone. When Smith tried to get out of the car, he fell to the ground intoxicated and barely able to speak. Snickles then went back inside the car to check the glove compartment for any identification or vehicle information.

While Snickles was looking for this information, he noticed an image on

4

the screen of the Nextbook tablet as it lay on the front passenger seat. According to a written deposition statement that he completed later that same day, Snickles saw that "[o]n the screen of this device was a Black male penis, appearing near a bald white female[']s vagina." A. 130.

Snickles contacted his dispatcher to run Smith's information and learned that Smith was a registered sex offender. He then spoke by telephone with Kyle Kirby—a state police investigator—to share what he had seen on the tablet, and Kirby instructed Snickles to secure any electronic devices that were in the car. Snickles stated in his deposition that "[t]he electronic device [the Nextbook tablet] was secured as it may pertain to a possible illegal sexual encounter with a female" and that another trooper "secured the item, for further possible evaluation[.]" A. 130.

By the time that the tablet was seized, the tablet was off and the image that Snickles reported seeing was no longer visible on the screen. The tablet was secured by another trooper into an evidence bag and stored at a state police barracks.

In the meantime, Smith was placed under arrest for driving while intoxicated, and he was taken to the hospital where he stayed overnight before

returning home the next day. That next day—October 31, 2014—Kirby went to Smith's home to seek Smith's consent to a search of the contents of the tablet and cell phone, but Smith declined to consent.

After Smith declined to consent to a search, Kirby waited for more than a month until December 1, 2014, before seeking a warrant from a state court judge to search the tablet and cell phone. The subsequent search of the tablet yielded dozens of videos and images of child pornography. This discovery in turn triggered additional search warrants for Smith's residences where the police seized devices that contained even more child pornography.

## B. Initial proceedings before the district court

A federal grand jury charged Smith with six counts of unlawful possession of child pornography, in violation of 18 U.S.C. § 2252A. Smith moved on multiple grounds to suppress the evidence from his tablet and from the subsequent searches of other electronic devices. The district court (Mordue, *J.*) conducted a hearing and then denied the motion to suppress. Smith entered a conditional plea of guilty to all six counts of the indictment, reserving the right to appeal the denial of the motion to suppress. The district court sentenced Smith principally to a term of 212 months of imprisonment.

*C. Initial appeal*

Smith appealed the denial of his motion to suppress and the length of his sentence. By prior summary order, we rejected all but one of Smith's challenges to the denial of the motion to suppress. *See United States v. Smith*, 759 F. App'x 62 (2d Cir. 2019). Specifically, we concluded that the police had probable cause to seize the tablet from Smith's car but that the record was not sufficiently developed to decide if the police had waited an unreasonably long time before seeking a warrant to search the contents of the tablet. *Id.* at 64–65.

The case was remanded to the district court to conduct an additional evidentiary hearing and to make findings. *Id.* at 65. We retained jurisdiction following remand to review the district court's determination as well as to review Smith's challenge to the length of his sentence. *Id.* at 65 & n.3.

*D. Hearing and ruling on remand*

The district court on remand conducted an additional evidentiary hearing with testimony from Kirby and Smith. It then re-affirmed in a written ruling its prior conclusion that the delayed search was not unreasonable. In doing so, the district court addressed each of the four factors that we identified as relevant to deciding whether the delay was unreasonable: "[1] the length of the delay, [2] the

7

importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized items, and [4] the strength of the state's justification for the delay." *Smith*, 759 F. App'x at 65.

As to the first factor (length of delay), the district court concluded that "a month-long delay in obtaining a search warrant is not unreasonable *per se*." Supp. App. 127. It stated that "[c]ourts have found similar and even longer delays to be reasonable where the delay was justified by other factors." *Id.*

As to the second factor (importance of the tablet to Smith), the district court noted Smith's testimony that he used the tablet at times for "keeping in touch with family and friends" and for "some basic personal projects," *id.* at 128, but it also noted that Smith had a computer and alternative devices that could serve these functions. The district court found "no evidence that the seizure significantly infringed on [Smith's] property interests or prevented him from accessing important personal information," pointing out that Smith "never asked for the return of the tablet, nor did he communicate to authorities that he stored important personal information on it." *Id.*

As to the third factor (whether Smith had a reduced property interest), the district court determined that Smith's possessory interest in the tablet was

8

diminished because probable cause existed to believe that the seized device contained child pornography. According to the district court, the seriousness of the crime gave the police a strong interest in retaining the tablet rather than returning it to Smith.

Lastly, as to the fourth factor (the justification for delay), the district court found that Kirby "was solely responsible for 24 active criminal investigations across an expansive, rural area of New York State." *Id.* These investigations "included matters involving rape, suicide, drowning, burglary, grand larceny, sexual abuse, accidental shooting, unattended death, death of an incompetent person, and endangering the welfare of an incompetent person." *Id*. at 122. The size of Kirby's district "involved travel times of up to an hour and a half" to drive to outlying towns from the state trooper headquarters in Ray Brook, New York. *Id.* The district court cited Kirby's testimony that "he considered [Smith's] case to be one [of] the highest priorities on his case list," that "he worked all 19 of his scheduled workdays between October 30th and December 1st, and that he actively worked on [Smith's] case and other cases during that time." *Id.* at 129.

The district court went on to acknowledge that "[a]lthough Investigator Kirby's investigation could be viewed as slow-footed, he testified that he

9

obtained the warrant 'as soon as possible.'" *Id*. It added that "while one might expect that a search warrant would have been sought more expeditiously, the Court finds no evidence to indicate any deliberate, reckless, or grossly negligent disregard for [Smith's] rights." *Id.* Thus, the district court concluded that "even if the one-month delay in obtaining the search warrant was unreasonable, suppression is not warranted because it would serve no deterrent effect as there is no evidence of intentional wrongdoing by Investigator Kirby." *Id.* at 129 n.3.

**DISCUSSION**

In light of the district court's supplemental ruling, we now address the remaining two issues in this appeal: (1) whether the district court erred by denying Smith's motion to suppress insofar as Smith claims that the police waited an unreasonably long time before applying for a warrant to search his tablet, and (2) whether the district court erred when imposing a sentence of 212 months of imprisonment.

*A. Denial of suppression motion*

When reviewing the grant or denial of a motion to suppress, we apply a *de novo* standard of review of the district court's conclusions of law and a deferential, clear-error standard of review of the district court's findings of fact.

10

*See United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019). To the extent that a district court's determination may involve a mixed question of law and fact, we apply *de novo* review, including to any ultimate determination whether the established facts satisfy the relevant legal standard. *See United States v. Fiseku*, 915 F.3d 863, 869 (2d Cir. 2018).

### 1. *Whether the delay was unreasonable*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. A "search" occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects. *See Florida v. Jardines*, 569 U.S. 1, 5 (2013); *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012); *El-Nahal v. Yassky*, 835 F.3d 248, 253–54 (2d Cir. 2016). A "seizure" of personal property occurs for purposes of the Fourth Amendment if the police meaningfully interfere with an individual's possessory interests in that property. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018).

Police investigations commonly involve an initial seizure of a person's

11

property for purposes of conducting a search of the contents within it. If the police have probable cause to believe that the property contains contraband or evidence of a crime and if it is necessary to seize or secure the property immediately to prevent its destruction or disappearance, the Fourth Amendment allows the police to seize or secure the property without a warrant provided that they follow up by applying to a judge for a warrant to search the property's contents. *See Illinois v. McArthur*, 531 U.S. 326, 332–34 (2001); *United States v. Place*, 462 U.S. 696, 701 (1983).

The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with diligence to apply for the warrant. The Supreme Court "has upheld temporary restraints where needed to preserve evidence until police could obtain a warrant," and has never "held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence *while the police diligently obtained a warrant in a reasonable period of time*." *McArthur*, 531 U.S. at 334 (emphasis added). To the same effect, we have also ruled that "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *United States v. Martin*, 157 F.3d 46, 54

(2d Cir. 1998).

Other courts have well explained why the police may not unreasonably delay in seeking a warrant. "We demand expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable." *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015). Moreover, "unnecessary delays also undermine the criminal justice process in a more general way: they prevent the judiciary from promptly evaluating and correcting improper seizures." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). "What, after all, is 'reasonable' about police seizing an individual's property on the ground that it potentially contains relevant evidence and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence needed for trial or is totally irrelevant to the investigation and should be returned to its rightful owner?" *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, *J.*).

In *Martin*, we considered whether it was unreasonable under the Fourth

13

Amendment for the police to delay eleven days before applying for a warrant to search a package that the police seized from United Parcel Service ("UPS") and for which the police had probable cause to believe contained contraband. We noted that "[i]n some circumstances eleven days might well constitute an unreasonable delay," but held that "several factors lead us to conclude that, under the particular circumstances present here, the delay was not constitutionally infirm." 157 F.3d at 54. These case-specific factors in *Martin* principally included that the delay involved two intervening weekends and the Christmas holiday, that the defendant had assumed a risk that his accomplice would reveal (as he did) the contents of the UPS package to the police, and that the defendant had voluntarily relinquished control of the package to UPS for delivery. *Id.* We held that "while we would normally expect police officers to secure a search warrant in considerably less time than was taken here, under the particular circumstances present here, we cannot say that the delay in securing the . . . warrant was so 'unreasonable' as to violate the Fourth Amendment." *Id.*

As we outlined in our prior summary order in this case, the following four factors are generally relevant to whether the police have waited an unreasonable amount of time before seeking a search warrant: [1] the length of the delay, [2]

14

the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay. *See Smith*, 759 F. App'x at 65.[1] We asked the district court on remand to evaluate the relevant factors to decide if the delay was unreasonable. Although we appreciate the district court's conscientious review, we are unable to agree with its assessment of several of these factors.

As to the first factor (the length of delay), the district court stated that "a month-long delay in obtaining a search warrant is not unreasonable *per se*." Supp. App. 127. We do not agree. As we observed in *Martin*, "[i]n some circumstances eleven days might well constitute an unreasonable delay," and "we would normally expect police officers to secure a search warrant in considerably less time than" eleven days. 157 F.3d at 54. The month-long delay at issue here is nearly three times as long as the delay in *Martin* and is not presumptively reasonable.

If the police have seized a person's property for the purpose of applying

---

[1] Other federal appeals courts have set forth similar relevant factors that essentially seek to balance the individual's possessory interest against the government's continuing interest in retaining the property for investigation or prosecution. *See, e.g., United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019); *United States v. Sullivan*, 797 F.3d 623, 633–34 (9th Cir. 2015); *Christie*, 717 F.3d at 1162; *United States v. Laist*, 702 F.3d 608, 613–14 (11th Cir. 2012); *Burgard*, 675 F.3d at 1033–34; *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011).

for a warrant to search its contents, it is reasonable to expect that they will not ordinarily delay a month or more before seeking a search warrant. After all, if the police have probable cause to seize an item in the first place, there is little reason to suppose why they cannot promptly articulate that probable cause in the form of an application to a judge for a search warrant.

The facts of this case are a good example. Every fact that was material to probable cause was set forth in a single paragraph in the search warrant application. Every one of these facts was known to the police on the same day that the tablet was seized from Smith—October 30, 2014.

In addition, although the district court concluded that a month-long delay was not unreasonable *per se*, it did not explain what weight this factor should have among the balance of factors. Instead, the district court went on to observe that "[c]ourts have found similar and even longer delays to be reasonable where the delay was justified by other factors." Supp. App. 127. But this analysis prematurely shifts to evaluating the police's reasons for the delay rather than reckoning with the length of delay itself, which is the first factor that a court must consider when deciding if the police have unreasonably delayed in seeking a search warrant.

We give independent weight to the length of delay, and we conclude that a month-long delay well exceeds what is ordinarily reasonable. The first factor (length of delay) weighs substantially in favor of Smith.

As to the second factor (importance of the seized property to the defendant), our starting point is to consider the nature of the property seized: a personal tablet computer that is typically used for communication and for the storage of immense amounts of personal data. The sheer volume of data that may be stored on an electronic device like a Nextbook (or similar tablet computer products like an Apple iPad) raises a significant likelihood that much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity.

For this reason, we have recognized the special concerns that apply when law enforcement seize and search people's personal electronic data and communication devices. "Tax records, diaries, personal photographs, electronic books, electronic media, medical data, records of internet searches, banking and shopping information—all may be kept in the same device, interspersed among the evidentiary material that justifies the seizure or search." *United States v. Ganias*, 824 F.3d 199, 218 (2d Cir. 2016) (*en banc*). "While physical searches for

17

paper records or other evidence may require agents to rummage at least cursorily through much private material, the reasonableness of seizure and subsequent retention by the government of such vast quantities of irrelevant private material was rarely if ever presented in cases prior to the age of digital storage, . . ." *Id.* Thus, we have acknowledged that the "search and seizure of digital media is, in some ways, distinct from what has come before" the advent of personal electronic storage and communication devices. *Id.*

Indeed, this fundamental distinction between one's ordinary personal effects and one's personal electronic devices has persuaded the Supreme Court to accord broader constitutional protection when the police seize a person's "smart" cell phone. In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court considered the authority of the police to conduct a search of a person's cell phone when seized incident to the arrest of the person. As the Supreme Court recognized, the prevailing rule was that the police could conduct a search of ordinary personal effects that were found on an arrestee's person without the need to apply for a search warrant. *Id.* at 382–85. But the Court observed that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 393.

The Court went on to describe the immense storage capacity of modern cell phones and how people commonly use them to store vast amounts of highly personal information. *Id.* at 393–97.

All these extraordinary characteristics led the Supreme Court to conclude that "[o]ur answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 403. The same rule has been applied to the search of cell phones seized under other exceptions to the Fourth Amendment's warrant requirement. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 79 & n.11 (2d Cir. 2018) ("plain view" exception); *United States v. Camou*, 773 F.3d 932, 943 (9th Cir. 2014) (automobile exception).

The upshot is that the search and seizure of personal electronic devices like a modern cell phone or tablet computer implicates different privacy and possessory concerns than the search and seizure of a person's ordinary personal effects. Although the district court did not acknowledge or discuss the significance of this distinction, we think it vital to assessing the importance of the seized property to a defendant when the item in question is a tablet computer or other personal electronic device.

19

Nevertheless, the district court here concluded that Smith's testimony about the use and particular significance of the tablet to him was spare in detail, that he had alternative electronic devices that could serve the same functions as his tablet, and that he did not request the return of the tablet. Notwithstanding the distinctive qualities of Smith's tablet as a personal electronic device, these findings adequately support the district court's conclusion that the second factor (importance of the seized property to the defendant) weighs in the Government's favor.

As to the third factor (whether the defendant had a reduced property interest in the seized item), the tablet was owned by Smith and was taken from the car he had been driving. Smith did not consent to the seizure of the tablet. Nor did he consent to a search of its contents when Kirby sought his permission the next day. This case is unlike those where courts have found that a defendant has a diminished property interest because the defendant or a co-owner consented to the initial seizure, or because the defendant later consented to a search after the property's seizure, or because the property had been otherwise voluntarily relinquished to a third party.[2] Smith did nothing to reduce his

---

[2] *See, e.g., Sullivan*, 797 F.3d at 634 (defendant consented to search of laptop computer 17 days after it had been seized); *Christie*, 717 F.3d at 1163 (co-owner of computer consented to seizure

20

property interest by means of consent or voluntarily relinquishing control of his tablet computer.

The district court concluded that Smith's possessory interest was diminished for a different reason: because the police had probable cause to believe that the tablet contained child pornography. It is true that the existence of probable cause had bearing on Smith's possessory interest. It entitled the police to immediately seize the tablet so that they could apply for a warrant to search its contents. The fact that there was probable cause—rather than merely reasonable suspicion—allowed more time for the police to retain possession of the tablet pending their application for a search warrant. "The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion," and "[a]ll else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." *Burgard*, 675 F.3d at 1033; *cf. United States v. Babcock*, 924 F.3d 1180, 1190–92 (11th Cir. 2019) (reasonable suspicion would not justify warrantless seizure with delay of two days for police to seek warrant to search cell phone).

without objection from defendant); *Laist*, 702 F.3d at 618 (defendant initially consented to seizure before later revoking consent); *Martin*, 157 F.3d at 54 (package with suspect contraband voluntarily relinquished to UPS).

21

Still, to the extent that Smith's possessory interest was offset by the police's probable cause to seize the tablet, the police's interest was delimited by the obligation to seek a search warrant without unreasonable delay. That is because "[t]he longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one." *Burgard*, 675 F.3d at 1033. Therefore, the existence of probable cause is relevant to Smith's possessory interest but far from dispositive to deciding the reasonableness of the ensuing delay in seeking a search warrant.

Nor does the record show that Smith's tablet had independent evidentiary value that would have justified the police's retention of the tablet without regard to whether they ever sought a warrant to search the tablet's contents. *See, e.g.,* *Sparks*, 806 F.3d at 1340; *Pratt*, 915 F.3d at 273 ("We decline to affirm on the government's alternative argument that it could retain the phone indefinitely because it had independent evidentiary value, like a murder weapon.").

Although the police had probable cause at the outset to seize the tablet for further investigation, they did not charge Smith with possession of child pornography until after the tablet was searched and incriminating images found.

Before obtaining a search warrant, Kirby was uncertain what the search of the tablet would reveal, stating in equivocal terms in his warrant application that Snickles had seen male genitalia near a "possibly" pre-pubescent female's genitalia. A. 132. Similarly, Snickles' deposition statement on the day of the seizure described the female genitalia he saw on the tablet screen as "bald" but without description of age, stating only that "[t]he electronic device was secured as it may pertain to a *possible* illegal sexual encounter with a female" and that another trooper "secured the item, for *further possible evaluation*." A. 130 (emphasis added).

These circumstances show that this is not like a case where the police seize in plain view a murder weapon or obvious contraband like narcotics that retains investigative or prosecutorial value regardless of any further search of its contents. The tablet's evidentiary value turned solely on what the police might find from a search of its contents. And the police could not search its contents unless and until they applied for a search warrant.

Thus, the existence of probable cause diminished Smith's property interest in the tablet for only so long as it was reasonable for the police to wait before obtaining a warrant to search its contents. Because Smith otherwise retained a

23

strong property interest in the tablet, we conclude on balance that the third factor (reduced property interest) is either neutral or weighs in Smith's favor.

As to the fourth factor (the justification for the delay), the seizure here occurred when Smith was arrested on October 30, 2014, and the record shows that Kirby engaged in very little investigation of Smith between that date and when he applied for a search warrant on December 1, 2014. On the day after the seizure of the tablet, Kirby went to Smith's home to seek consent to search the tablet, which Smith declined to provide. As part of his efforts to investigate Smith's prior criminal history, Kirby made an inquiry to a police department in Rhode Island. Although the record does not reflect the exact date when Kirby made this inquiry, Kirby testified that he received the requested information within just two or three days.

The record does not otherwise show that Kirby engaged in any investigation of Smith's case for nearly four weeks from November 4 to December 1, 2014. The desultory nature of the police investigation is underscored by the fact that, when Kirby eventually applied for the search warrant, he mistakenly claimed that Smith had multiple prior sex offense convictions despite the fact that he had a single prior sex offense conviction.

The district court found that a month-long delay was justified by reason of Kirby's caseload and the geographical size of the region that he covered. Although we do not question the district court's findings about the numbers and types of cases or the size of the region that Kirby covered, these findings by themselves fall short of justifying the delay. The record does not show that there was any particular investigation or police duty that specifically delayed Kirby in applying for a search warrant for the seized tablet.

The fact that a police officer has a generally heavy caseload or is responsible for a large geographical district does not without more entitle the officer to wait without limit before applying for a warrant to search an item that the officer has seized. That is because the Fourth Amendment imposes a time-sensitive duty to diligently apply for a search warrant if an item has been seized for that very purpose, and all the more so if the item has been warrantlessly seized. The police may not overlook this duty to attend to other matters for which the Constitution imposes no such time-sensitive duty unless there are important reasons why other matters must take priority. "After seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment." *Burgard*, 675 F.3d at 1035.

Indeed, this case involves an investigator with two dozen cases on his docket in a predominantly rural corner of upstate New York. If we were to conclude that the general press of business for this investigator with this caseload is reason enough to excuse a month-long delay in applying for a search warrant, it is hard to imagine why even longer delays would not become the new "normal" for investigators in areas with far larger caseloads and congested traffic conditions.

Nor are the district court's other findings enough to justify the delay. The district court recited Kirby's testimony that "he obtained the warrant 'as soon as possible.'" Supp. App. 129. But this statement is not supported in the record in light of the absence of any investigative activity by Kirby on Smith's case for nearly four weeks from November 4 to December 1, 2014.

The district court relied on Kirby's testimony that the case against Smith was "'really serious,'" that it was "'very important'" to identify the possibly minor victim seen on the tablet, and that this was one of Kirby's "highest priority cases" at the time. *Id*. at 123. But all this testimony cuts against the claim that Kirby had good reason to devote his attention to other cases before applying for a warrant to search Smith's tablet.

We conclude that the fourth factor (the justification for delay) weighs in Smith's favor. Even the district court acknowledged that "Investigator Kirby's investigation could be viewed as slow-footed," and "one might expect that a search warrant would have been sought more expeditiously." *Id*. at 129. This was undoubtedly so.

All in all, the balance of these relevant factors weighs in favor of a conclusion that Kirby's delay in seeking a search warrant for Smith's seized tablet computer was unreasonable under the Fourth Amendment. In *United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009), the Eleventh Circuit concluded that the Government's delay in seeking a search warrant was unreasonable on similar grounds. Federal law enforcement agents in *Mitchell* had probable cause to believe that the defendant's computer contained child pornography, and agents seized the computer hard drive from the defendant without his consent and then waited 21 days before applying for a warrant to search the computer. *Id*. at 1349. The agent testified that he did not see any urgency to apply for a warrant before he departed for a two-week training program, and the Government further argued that the delay was justified because this particular agent was the only one in the area who was qualified to conduct a forensic

27

examination of the hard drive's contents. *Id.* at 1351–52.

The Eleventh Circuit noted that a delay may be excused "if some overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case," and "that there may be occasions where the resources of law enforcement are simply overwhelmed by the nature of a particular investigation, so that a delay that might otherwise be unduly long would be regarded as reasonable." *Id.* at 1353. But the court ruled that these overriding circumstances had not been established on the facts before it: "[n]o effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush," and "[u]nder these circumstances, the twenty-one-day delay was unreasonable." *Id.*

For similar reasons, the record before us here shows that Kirby was not diligent in seeking a warrant to search Smith's tablet, and there were no overriding circumstances to otherwise justify a month-long delay. The delayed search of Smith's tablet was unreasonable in violation of the Fourth Amendment.

### 2. *Whether to apply the exclusionary rule*

Not every violation of the Fourth Amendment justifies invocation of the exclusionary rule to require suppression of evidence. As we have recently noted,

28

"the exclusionary rule is a judicially-created mechanism of safeguarding against unreasonable searches and seizures—violations of the Fourth Amendment—primarily through its deterrent effect." *United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (*per curiam*).

For this reason, the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence. *See Davis v. United States*, 564 U.S. 229, 236–40 (2011); *Herring v. United States*, 555 U.S. 135, 144 (2009). By contrast, the application of the exclusionary rule is not appropriate for constitutional violations that are the product of isolated simple negligence, because exclusion in such circumstances will not result in appreciable deterrence of police misconduct. *See Davis*, 564 U.S. at 237–38; *Herring*, 555 U.S. at 137, 144 n.4.

The district court found "no evidence to indicate any deliberate, reckless, or grossly negligent disregard for [Smith's] rights." Supp. App. 129. This finding is well-supported by the record. Although we hold that Kirby's delay in applying for a warrant to search Smith's tablet was unreasonable, the record does not show that Kirby acted with a deliberate intent to violate Smith's rights or that it

was reckless or grossly negligent for Kirby to allow a month to slip by before applying for a search warrant.

Indeed, so far as the record reflects, Kirby's delay was an isolated act of negligence. His delay did not afford the police any strategic advantage in Smith's case. *Cf. United States v. Stokes*, 733 F.3d 438, 443–44 (2d Cir. 2018) (exclusionary rule warranted where "law enforcement personnel made a deliberate decision to violate constitutional requirements" as part of "a deliberate strategic choice to have the officers attempt to arrest [the defendant] without a warrant, in order to question [the defendant] outside of the presence of counsel"). Nor does the record show systemic or recurring negligence by Kirby or any of the investigative agencies involved in this case. There would be no appreciable deterrent value achieved by ordering suppression of the evidence in this case.

To be sure, the Supreme Court has instructed that "[t]he pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers," and "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (internal quotation marks omitted); *see*

30

*also Davis*, 564 U.S. at 238 (application of exclusionary rule not warranted "when the police act with an objectively reasonable good-faith belief that their conduct is lawful" (internal quotation marks omitted)).

Even from this objective standpoint, we cannot say that a reasonably well-trained officer in Kirby's position would have known that the month-long delay amounted to no less than a violation of Smith's Fourth Amendment rights. As is clear from our discussion above, the constitutional reasonableness of delay depends on the assessment and balancing of multiple factors. For better or worse, this is not an area of Fourth Amendment law that has reduced itself to bright-line rules.

Not surprisingly, precedent ran both ways as of the date of the seizure of Smith's tablet in this case. As we have already discussed, some of the rulings would have suggested to an officer in Kirby's position that the 31-day delay in this case was too long.[3] By contrast, other rulings pointed in a different direction—upholding delays of similar or even much longer duration.[4] Although

---

[3] *See Martin*, 157 F.3d at 54; *Mitchell*, 565 F.3d at 1353; *see also United States v. Dass*, 849 F.2d 414, 415–16 (9th Cir. 1988) (finding unreasonable delays of between seven to 23 days to seek search warrants for seized packages).

[4] *See, e.g.*, *United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013) (upholding 13-month delay where warrant affidavit was drafted the next day but not executed and where there was confusion about whether warrant had previously been obtained); *Laist*, 702 F.3d at 616–17

an objectively reasonable officer in Kirby's position should have realized that by waiting a month he was perilously near the constitutional line, we are not convinced that an objectively reasonable officer would have known that the delay amounted to a violation of the Fourth Amendment.

All that said, we have stated and clarified principles above that shall guide law enforcement officers with respect to what circumstances establish an unreasonable delay under the Fourth Amendment. We have discussed how the length of delay has independent weight as a factor and how a delay of one month or more is ordinarily too long for an officer to apply for a warrant. We have described how seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests. And we have explained how the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence. These principles shall likewise inform the application of the exclusionary rule in future cases.

---

(upholding 25-day delay where initial seizure was based on consent, where record showed extended efforts of agent to draft careful warrant application, and where agent had generally busy docket and broad geographical area); *United States v. Vallimont*, 378 F. App'x 972, 976 (11th Cir. 2010) (upholding a 45-day delay where there were "overriding circumstances necessitating" the officer's "diversion to other cases," and more generally where "the law enforcement resources . . . were simply overwhelmed" (internal quotation marks omitted)).

*B. Sentencing*

Smith further challenges his sentence. We review a district court's sentence for whether the district court abused its discretion, either with respect to the procedures it followed or the substantive reasonableness of the sentence imposed. *See United States v. Ojeda*, 946 F.3d 622, 627 (2d Cir. 2020). Our review incorporates *de novo* review of any questions of law and clear-error review of any questions of fact. *Id.*

The district court calculated Smith's offense level primarily under section 2G2.2 of the then-applicable U.S. Sentencing Guidelines ("U.S.S.G."). Smith's final offense level was 34, which in combination with a criminal history category of III resulted in a sentencing guidelines range of 188–235 months of imprisonment.[5]

As relevant to this appeal, Smith objected to the application of U.S.S.G.

---

[5] The guidelines calculation included the following components: a base offense level of 18 (U.S.S.G. § 2G2.2(a)(1)); an increase of two levels because the offense involved a prepubescent minor or a minor who had not attained the age of 12 years (U.S.S.G. § 2G2.2(b)(2)); an increase of four levels because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, or sexual abuse or exploitation of an infant or toddler (U.S.S.G. § 2G2.2(b)(4)); an increase of five levels for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor (U.S.S.G. § 2G2.2(b)(5)); an increase of two levels because the offense involved the use of a computer (U.S.S.G. § 2G2.2(b)(6)); an increase of five levels because the offense involved 600 or more images (U.S.S.G. § 2G2.2(b)(7)(D)); and a decrease of two levels for acceptance of responsibility (U.S.S.G. § 3E1.1(a)).

§ 2G2.2(b)(5), which provides for an increase of five offense levels "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The Guidelines commentary defines a "pattern of activity involving the sexual abuse or exploitation of a minor" to mean "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2 cmt. 1.

The Government based its claim that Smith had engaged in a pattern of sexual abuse of minors on grounds of his abuse of a seven-year-old girl ("KN2"), for which he had been convicted of second-degree child molestation in Rhode Island in 1993, and also his sexual abuse of the girl's younger sister ("KN1"), for which Smith had never been charged or convicted. Smith did not contest his sexual abuse of KN2 but denied abusing KN1. In light of this dispute about whether Smith had sexually abused KN1, the district court heard testimony at the sentencing hearing from both KN1 and Smith.

KN1 testified about two incidents when she was 3 or 4 years old, and both these incidents occurred at Smith's home in Rhode Island where the parents of

34

KN1 and KN2 had left her for babysitting by Smith's wife. The first incident involved Smith's "touch[ing] [KN1's] vagina with his fingers and as well as his mouth." A. 603. The second incident was early one morning when Smith "instructed [KN1] to lay on the couch and get undressed," then he played "VHS pornography [and] he asked if [KN1] wanted to do certain things in that video." A. 604. Smith had her perform oral sex on him until she "began to cry," at which point he stopped and then "began to perform oral sex on [KN1]," and "[f]rom there he put [her] on his lap where he then sodomized [her]." A. 604–05.

On cross examination, KN1 stated that despite her very young age at the time of the incident she recalled what happened clearly because it was a "very life altering feeling and emotion" when Smith abused her. A. 606.  KN1 acknowledged that she had not told law enforcement at the time about the abuse when she had been questioned during the course of the investigation of Smith's abuse of KN2. According to KN1, she "shut down immediately and answered basically no questions," because she "was very afraid." A. 612.

After KN1 testified, Smith took the witness stand to deny that KN1 or KN2 had ever come to his home or that his wife had ever babysat for KN1 or KN2. He also denied the incidents of abuse about which KN1 testified. On the other hand,

35

Smith admitted that he knew the parents of KN2 and also that he had once performed oral sex on seven-year-old KN2 when he went to the house of KN2 to engage in drug use and sexual relations with KN2's mother. This incident involving KN2 was the basis for Smith's later arrest and conviction for child molestation in 1993.

At the conclusion of the evidentiary hearing, the district court stated its finding by a preponderance of the evidence that Smith "did, in fact, sexually abuse [KN1] in or around 1989 or 1990," and that "[b]ased on this finding, as well as the conviction of the defendant for having sexually abused her sister [KN2], the defendant meets the requirements of 2G2.2(b)(5) of the United States Sentencing Guidelines" to warrant a five-level increase in the guidelines offense level. A. 629–30.

Smith noted his objection to this ruling, arguing that the Government had failed to corroborate KN1's account and that KN1's account was not reliable because KN1 testified that Smith's wife's name was "Brenda" when in fact it was "Jill." A. 632–33. The district court stated that it had considered this discrepancy in the name of Smith's wife but that it was not material to the court's decision crediting KN1 about what had occurred.

36

At the conclusion of this evidentiary phase of the sentencing hearing, the district court then heard general arguments from counsel and a statement from Smith. The district court also invited KN1 to speak with respect to the sentence that the court should impose. Smith objected on the ground that KN1 should not be permitted to address the court because she was not a "victim" of the pornography offense for which Smith was convicted. A. 638–39. But the district court overruled this objection, and KN1 then spoke at some length about her views, including her belief that "[t]his man is sick" and how his abuse "changed [her] to the core" and how she "ha[s] nightmares about it happening to [her] children and them being broken the way [she] was." A. 639.

The Government urged the district court to impose a sentence of 235 months of imprisonment, which was at the top of the guidelines range. By contrast, Smith sought a sentence below the guidelines range. He urged the district court to reject the application of U.S.S.G. § 2G2.2(b)(5) as flawed and instead to impose a sentence of 10 years of imprisonment.

The district court then turned to the imposition of sentence. Referring to the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court concluded that a sentence within the guidelines range was warranted. The district court

37

noted its consideration of Smith's prior conviction for second-degree child molestation as well as information from the presentence report reflecting that, while on probation for the molestation offense, he had been arrested in Vermont with a 16-year-old girl with whom he admitted that he had engaged in sexual intercourse. The district court further noted its consideration of the sexual abuse of KN1 and that Smith "possessed hundreds of videos depicting child pornography, some of which depicted the most violent conduct thinkable." A. 646. Based on its conclusion that Smith "presents a significant risk of danger to the community," the district court decided on a sentence of 212 months of imprisonment, which it noted was "a sentence at the mid range of the guidelines [that] is sufficient, but not greater than necessary, to meet the goals of sentencing outlined in 18 U.S.C. 3553(a)." A. 647.

On appeal Smith argues that the district court procedurally erred by crediting the testimony of KN1, which Smith submits was not corroborated and not reliable. We find no clear error in the district court's credibility determination on the basis of consideration of the testimony of both KN1 and Smith. Notwithstanding the passage of time, the very young age of KN1 at the time of the incidents in question, and the alleged discrepancies in KN1's account, the

38

district court acted well within its discretion to credit KN1's account of the specific incidents when Smith sexually abused her. Indeed, "we pay special deference to the district court's credibility determination, and a factfinder who determines that a witness has been contradictory in some respects may nevertheless find the witness entirely credible in the essentials of his testimony." *United States v. Gomez*, 877 F.3d 76, 97 (2d Cir. 2017) (internal citation, quotation marks, and alterations omitted). Because Smith had a full opportunity to cross-examine KN1 as well as to testify to contradict KN1's account, there is no merit to Smith's claim that the district court's reliance on KN1's testimony amounted to a violation of the Due Process Clause.

Smith further argues that the district court procedurally erred when it allowed KN1 to speak during the sentencing phase of the sentencing hearing. But even if Smith is correct that KN1 did not qualify as a statutory "victim" of Smith's most recent child pornography offense, *see* 18 U.S.C. § 3771(e)(2)(A), Congress has not placed arbitrary limits on what information a district court may consider at sentencing. To the contrary, Congress has instructed that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the

United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Thus, we have recognized that "[d]istrict courts have broad discretion both as to the type of information they may consider in imposing sentence and the source from which that information derives." *United States v. Messina*, 806 F.3d 55, 65 (2d Cir. 2015). And "it has long been established that the Due Process Clause does not restrict a court with respect to the type of information it may consider for purposes of sentencing." *United States v. Delacruz*, 862 F.3d 163, 175 (2d Cir. 2017).

Provided that a defendant has a fair opportunity to respond, a district court has discretion at a sentencing hearing to receive statements or information that are relevant to what sentence the court should impose. KN1's statement at sentencing about the damaging impact of Smith's abuse on her life was relevant to the district court's consideration of Smith's prior conduct of sexual abuse and also several of the statutory purposes of sentencing—including just punishment, the need for deterrence, and protecting the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

Lastly, Smith faults the district court's reliance on U.S.S.G. § 2G2.2, a

guideline which we have criticized as often too severe in *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), and *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010). But unlike the facts in *Jenkins* and *Dorvee*, this case involved substantial evidence of Smith's actual sexual abuse of children. As we noted in *Jenkins*, "[w]hether a child pornography offender has had or has attempted to have contact with children is an important distinction." 854 F.3d at 191.

Smith finally challenges his sentence as substantively unreasonable. Our review for substantive unreasonableness is "particularly deferential," because we give "due respect [to] the sentencing court's very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Singh*, 877 F.3d 107, 115 (2d Cir. 2017) (internal quotation marks omitted). In light of Smith's possession of large amounts of child pornography and his history of sexually violating children, we cannot conclude that the sentence was substantively unreasonable.

Accordingly, we affirm the sentence imposed by the district court.

**CONCLUSION**

We have considered all other arguments raised by Smith and conclude that they are without merit. For the foregoing reasons, the district court's judgment of

conviction and sentence is **AFFIRMED**.

KEARSE, *Circuit Judge*, concurring:

I concur in the judgment, although I do not share the majority's view that "Kirby's delay in seeking a search warrant for Smith's seized tablet computer was unreasonable under the Fourth Amendment," Majority Opinion *ante* at 27; *e.g.*, *id*. at 31-32 (the "31-day" "delay amounted to a violation of the Fourth Amendment").

First, although there was a span of 31 calendar days from the seizure of the tablet to the application for the search warrant, I regard the appropriate frame of reference as the 19 working days within that span. *See*, *e.g.*, *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998). While Smith was without his tablet for 31 days, he evinced no interest in when it would be returned; and it is difficult for me to think it appropriate, in determining whether the delay was unreasonable, to tax the responsible officer for the days he was scheduled not to work.

More importantly, I do not see a basis for overturning the conclusion of the district court that the delay did not violate the Fourth Amendment. The touchstone of the Fourth Amendment is reasonableness, and the Constitution requires the police, after a Fourth Amendment seizure, to diligently apply for a search warrant within a reasonable time, *see generally Illinois v. McArthur*, 531 U.S. 326, 332-34

(2001). The district court in this case did not in fact find the delay "presumptively reasonable," Majority Opinion *ante* at 15, but rather considered the entire record and concluded that the delay, while "considerable," was "not . . . unreasonable under the circumstances" (SPA 127). In so concluding, "the district court found," *inter alia*, "that Kirby 'was solely responsible for 24 active criminal investigations across an expansive, rural area of New York State.' . . . These investigations 'included matters involving rape, suicide, drowning, burglary, grand larceny, sexual abuse, accidental shooting, unattended death, death of an incompetent person, and endangering the welfare of an incompetent person.'" Majority Opinion *ante* at 9 (quoting SPA 128, 122).

The majority finds that "Kirby was not diligent *in seeking a warrant to search Smith's tablet*," *id*. at 28 (emphasis added), without giving any apparent consideration to his diligence in handling his other casework, which "included victim/witness interviews, collection of evidence, scene photography, and time searching for suspects" (SPA 128), in a geographic area that could require three hours of travel time to and from police headquarters (*see id*. at 122). Rather, the majority finds that Kirby was not diligent in this case for reasons "similar," Majority Opinion *ante* at 27, 28, to those that were insufficient to find a 21-day delay reasonable in

2

*United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009). But in *Mitchell*, there were two government agents who had seized the defendant's computer component, either of whom "could have" applied for the search warrant; but they waited 21 days to apply because the lead agent "'didn't see any urgency'" and went off to a training program for two weeks. *Id.* at 1351. Here, Kirby was the sole officer on the case, considered this case as one of his "'highest priority cases,'" Majority Opinion *ante* at 26 (quoting SPA 123), and "actively worked on" matters in his 24-case caseload on "all 19 of his scheduled workdays" (SPA 129). The majority simply finds that in this case "there were no overriding circumstances to otherwise justify a month-long delay." Majority Opinion *ante* at 28. I do not find this case similar to *Mitchell*. And I am not convinced that the district court here erred in "declin[ing] to second-guess" (SPA 129) the view of Kirby or the State Police as to how, reasonably, to prioritize his duties in the 24 active cases described above, for which he had sole responsibility, on the 19 working days in question, on all of which he actively worked, when the owner never asked for the tablet's return or even inquired as to when it might be returned.